651 So.2d 1322 (1994)
BP OIL COMPANY
v.
PLAQUEMINES PARISH GOVERNMENT.
No. 93-CA-1109.
Supreme Court of Louisiana.
September 6, 1994.
Rehearing Granted October 13, 1994.
Order Amending Decision on Denial of Rehearing January 27, 1995.
*1324 George J. Domas, Bruce J. Oreck, Robert S. Angelico, Liskow & Lewis, Carol L. Dunne, New Orleans, for plaintiff-appellant.
Philip F. Cossich, Jr., Pivach, Cossich & Pivach, Les Anthony Martin, Belle Chasse, for respondent-appellant.
Ernest R. Eldred, Larry Dewayne Dyess, Baton Rouge, for East Baton Rouge Par., amicus curiae.
Robert W. Nuzum, New Orleans, for Citizens Utilities Co., CF Industries Inc., amicus curiae.
Michael R. O'Keefe, III, New Orleans, for Louisiana Ass'n Business & Industry and Harvey Canal Industry Ass'n, amicus curiae.
Eugene G. Taggart, Anne L. Lewis, Randye C. Snyder, Rex E. Lindeman, John D. Fricke, New Orleans, for Louisiana Chemical Ass'n, Mid-Country Oil & Gas, amicus curiae.
G. William Jarman, M. Dwayne Johnson, Linda S. Akchin, Baton Rouge, for Louisiana Ammonia Producers, amicus curiae.
Linda S. Akchin, Katherine W. King, Baton Rouge, for Louisiana Energy Users Group, amicus curiae.
Charles T. Williams, Jr., Metairie, for Louisiana Retail Merchants Ass'n, Great Atlantic & Pacific Tea, Target Stores, Mervyn's Inc., Supervalue Lewis Group Div., R & M Foods, Southeast Foods, Inc., Zuppardo's Economical, Gogalusa Meat Market, Brunet's Cajun Restaurant, C.A. Schnack Jewelry, Brewer Quality Homes, Chocolates by Helen Rose, J.C. Penney, Inc., McDonald's of Baton Rouge, Morris Kirshman & Co., Culture Recreation and Tourism Dept., amicus curiae.
Christopher J. Dicharry, Baton Rouge, James C. Exnicios, New Orleans, for Louisiana Pulp & Paper Associations, Georgia-Pacific Corp., Boise Cascade Corp., Intern. Paper Co., James River Corp., Stone Container Corp., Riverwood Intern. USA, Steve J. Theriot, amicus curiae.
Brian A. Eddington, Michael R. Fontham, Laurie B. Halpern, New Orleans, for Louisiana Public Service Com'n, amicus curiae.
John Schwab, William E. Hodgkins, Baton Rouge, for Cajun Elec. Power Co-op, amicus curiae.
Frank P. Simoneaux, Joell M. Keller, Baton Rouge, for Borden Chemicals and Plastics, Murphy Oil USA, Inc., CITGO, amicus curiae.
Christopher Guidroz, New Orleans, for Society Louisiana Certified Public Accountants, amicus curiae.
Bobby S. Gilliam, Penny D. Sellers, Shreveport, for Southwestern Elec. Co.
John D. Koch, Baton Rouge, for Louisiana Press Ass'n, amicus curiae.
Gregory D. Frost, Baton Rouge, for Health Trust Inc., amicus curiae.
John K. Parsons, Baton Rouge, for Trans Louisiana Gas Co., amicus curiae.
Judy Y. Barrasso, New Orleans, for Marathon Oil Co., amicus curiae.
*1325 William T. D'Zurilla, New Orleans, for Greater Baton Rouge Chamber, amicus curiae.
Charles T. Williams, Jr., John E. Baker, Metairie, for Abdalla's of Lafayette, Inc., Louisiana Nursery Outlet, Winn Dixie Stores, Inc., Louisiana Retailers Ass'n, amicus curiae.
Charles M. Samuel, III, for Plaquemines Federation of Teachers, Jefferson Federation of Teachers, amicus curiae.
Leo C. Hamilton, Baton Rouge, for NAACP, et al., amicus curiae.
Sam A. LeBlanc, III, New Orleans, for Chamber of New Orleans and River Region, amicus curiae.
Herschel L. Abbott, Jr., New Orleans, for BellSouth Telecommunications, amicus curiae.
John L. Diasselliss, III, LaPlace, Roy M. Lilly, Jr., Gibsland, Chapman L. Sanford, Baton Rouge, for St. Charles Parish School Bd., and St. John the Baptist Parish School Bd., amicus curiae.
Rehearing Granted to Consider Suspension of Tax Exemption October 13, 1994.
LEMMON, Justice.[*]
These four actions by a taxpayer against a local governing authority, seeking refunds of overpayments of local use taxes for the period between January of 1985 and October of 1990, are before the court on direct appeal from a judgment of the district court which ruled on numerous issues raised by cross-motions for summary judgment. Because one portion of the judgment declared a subsection of La.Rev.Stat. 47:305 unconstitutional, La. Const. art. V, § 5(D) authorizes a direct appeal to this court.
The principal issues are (1) the constitutionality of La.Rev.Stat. 47:305D(1)(h), which under a 1985 amendment fixed the value of a petroleum refinery by-product for local use tax purposes; more particularly, the conflict between the legislative mandate setting the method which local governments must use to value certain property for tax purposes and the self-operative taxing power granted to local governments by La. Const. art. VI, § 29; (2) the applicability of the exemption from sales and use taxes of two petroleum refinery by-products because of their use as energy sources under two subsections of the same statute, La.Rev.Stat. 47:305D(1)(g) and (h); (3) the applicability of the exclusion for reprocessing under La.Rev.Stat. 47:301(10)(c); (4) the applicability to local sales and use taxes of several legislative suspensions of statutory exemptions from sales and use taxes; and (5) the validity of the parish ordinance's lower interest rate on tax refunds than the rate set by state statute.

Facts
BP Oil Company operated a petroleum refinery in Plaquemines Parish during the pertinent taxing periods. As part of the process of refining crude oil into petroleum products such as gasoline and diesel oil, BP used refinery gas and coke-on-catalyst, two by-products of the refining process, as energy sources.
Refinery gas (also called "waste" or "tail" gas) is a gaseous by-product of the process of refining the raw material, crude oil, into finished products for sale at retail. Although the refinery gas generated from BP's refinery operations was not commercially marketable, BP scrubbed the refinery gas and used it to generate heat for boilers and other units in the refining process. BP's efficient use of refinery gas as an energy source effected a savings in the required amount of natural gas and other energy sources that BP otherwise would have had to purchase for its energy needs.
Coke-on-catalyst is a solid by-product of the refining process (coke) that accumulates on the catalyst, a solid material used to enhance chemical reactions in the refining process. As the particles of catalyst become coated with coke, the catalyst loses its effectiveness. In order to reuse the catalyst, BP burned off the coke, thereby generating heat which BP captured and used in the refining operation.
The taxes at issue in this litigation are use taxes levied by the Plaquemines Parish Government (the Parish) under Parish Ordinance *1326 No. 174 on BP's use of refinery gas and coke-on-catalyst. The ordinance, which had been adopted in 1978, levied a tax on "the sale at retail, the use, the lease or rental, the consumption and the storage for use or consumption of tangible personal property...." Plaquemines Parish Ordinance No. 174, § 2.01(2) (1978).
Prior to the 1985 legislation fixing the value of refinery gas, there had been a longstanding dispute between state and local taxing authorities and taxpayers on the issue of whether refinery gas was subject to sales and use taxes.[1] In 1972, the state taxing authority and the refining industry reached an administrative resolution of the dispute, agreeing that refinery gas would be taxed at four cents per 1,000 cubic feet. The parties later modified that agreement, effective January 1, 1985, to fix the value at fifty-two cents per 1,000 cubic feet, subject to annual adjustment.
By La.Acts 1985, No. 258, the Legislature adopted a formula "relative to the value of refinery gas for state and local sales and use taxation."[2] Act 258 amended La.Rev.Stat. 47:305, a statute pertaining to exclusions and exemptions from sales and use taxes, to rewrite Subsection D (then Paragraph [4]) which had previously exempted from sales and use taxes "[a]ll energy sources when used for boiler fuel except refinery gas when used for boiler fuel." The amendment changed the present Subsections D(1)(g) and (h) in several ways as discussed hereinafter, but particularly added to the energy sources exemption in the present Subsection D(1)(h) a provision fixing the value of "[r]efinery gas when used for any taxable purpose" at fifty-two cents per 1,000 cubic feet in 1985, with an adjustment formula for ensuing years. The amendment specifically provided that "such values shall be the maximum placed upon refinery gas by any local governmental subdivision or school board under any authority or grant of power to levy and collect sales or use taxes."
Beginning in February, 1985, BP voluntarily paid use taxes on refinery gas at that rate,[3] but later took the position that its refinery gas was exempt from taxation, at least in part, because of certain language in La.Rev.Stat. 47:305D(1)(g) and (h) after the 1985 amendment. BP thereafter only paid use taxes on refinery gas which was used for boiler fuel.
In 1990, the Parish, pursuant to an audit, demanded payment of $366,000 (rounded, including interest and penalty) in unpaid use taxes on refinery gas used between January 1, 1985 and March 31, 1989. Contending that refinery gas used for purposes other than as boiler fuel was exempt from taxes during the pertinent period, BP paid this amount under protest and filed Suit No. 34-001 to recover a refund plus interest.
BP later filed Suits No. 34-353 and 34-354 to recover $63,000 (rounded) and $234,000 (rounded) in overpayments of use taxes for the periods from February 1, 1985 through June 30, 1985 and from July 1, 1985 through December 31, 1987. In these actions BP contended that use taxes were only applicable to refinery gas which was used as boiler fuel.
The Parish then re-audited BP's operations and issued an assessment of $16,334,000 (rounded, including interest and penalty) for refinery gas, as well as coke-on-catalyst, used between January of 1985 and October of 1990. The revised assessments (1) sought for the first time to collect taxes for BP's use of coke-on-catalyst, and (2) changed the method of valuation of refinery gas to a method under the local ordinance, based on the purchase price of crude oil, which resulted in a valuation far in excess of fifty-two cents per 1,000 cubic feet.
BP paid this amount (after credit for previous payments) under protest and filed Suit No. 34-805 to recover a refund plus interest. In this action BP claimed several exemptions from taxation and alternatively contended *1327 that any taxable refinery gas was only taxable at the value fixed by La.Rev.Stat. 47:305D(1)(h), and not at the much higher value fixed by the parish ordinance.
The four actions were consolidated in the trial court. Prior to trial, each party filed cross-motions for summary judgment.
After a hearing on the motions, the trial court rendered one judgment deciding many issues. The court declared La.Rev.Stat. 47:305D(1)(h) unconstitutional on the basis that the statute's setting of the value at which the Parish must assess refinery gas for local use tax purposes violates La. Const. art. VI, § 29(A), which grants local governments the authority to levy and collect sales and use taxes, without legislative authorization, as long as the total sales and use taxes do not exceed three percent. The court noted that limitations on matters such as the value of personal property subject to taxation may apply to legislative taxing authorizations, but are not applicable to use taxes levied by local governmental bodies under Section 29(A). The gravamen of this declaration was to recognize the Parish's right to determine its own method of property valuation for tax purposes and to approve the Parish's use of the substantially higher valuation of refinery gas under the provisions of the Parish ordinance.
As to the other major issues, the trial court essentially rejected any refunds based on the exemptions and exclusions claimed by BP, except for the exemption of refinery gas used for purposes other than as boiler fuel during the period from June 16, 1985 to June 30, 1986. The court awarded BP a refund based on this exemption, plus interest on the refund at the rate of two percent, as provided in the ordinance. BP's other claims for refunds were dismissed.
Both parties appealed to this court from the judgment.
Constitutionality of La.Rev.Stat. 47:305D(1)(h)
The portion of the judgment of the trial court which vested appellate jurisdiction in this court was the declaration of unconstitutionality of La.Rev.Stat. 47:305D(1)(h), as amended by Act 258 of 1985 to provide that the value of refinery gas for state and local sales and use tax purposes shall be fifty-two cents per 1,000 cubic feet for 1985, with a formula for annual adjustment in the years thereafter.
The constitutional ruling arose out of the conflict between the method of valuation prescribed for state and local use taxes in La. Rev.Stat. 47:305D(1)(h) and the method of valuation for Plaquemines Parish use taxes in Ordinance No. 174. The taxes assessed by the Parish on BP's use of refinery gas and coke-on-catalyst, after the 1990 re-audit of BP's operations, were based on the method of valuation in the parish ordinance.
The Parish contended, and the trial court ruled, that La.Rev.Stat. 47:305(D)(1)(h)'s imposition of a mandatory method of valuation on local governments violated La. Const. art. VI, § 29(A), which provides:
(A) Sales Tax Authorized. Except as otherwise authorized in a home rule charter as provided for in Section 4 of this Article, the governing authority of any local governmental subdivision or school board may levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law, if approved by a majority of the electors voting thereon in an election held for that purpose. The rate thereof, when combined with the rate of all other sales and use taxes, exclusive of state sales and use taxes, levied and collected within any local governmental subdivision, shall not exceed three percent.
The trial court, commenting on the overall objective of Article VI, quoted this court's statement in Board of Directors of La. Recovery Dist. v. Taxpayers, 529 So.2d 384, 388 (La.1988) that "[a]nother objective was to make parishes and municipalities more than mere creatures of the Legislature through constitutional grants of self-operative powers." Reasoning that Section 29(A) granted self-operative power to local governments to enact sales and use taxes without legislative authorization, as long as the total tax does not exceed three percent, the trial court declared La.Rev.Stat. 47:305D(1)(h) unconstitutional *1328 as infringing on that power. The court relied on language of this court, in denying certiorari in Duplantis v. Terrebonne Parish School Bd., 328 So.2d 374 (La.1976), to the effect that statutory limitations on the rate of sales tax and the use of tax revenues are not applicable to a sales tax levied by a school board under La. Const. art. VI, § 29(A).
The trial court held that the Parish could dictate the specifics of the sales and use tax enacted under Section 29(A) as long as the ordinance did not exceed the scope of Section 29. The court emphasized that Section 29(A) only gave the Legislature the power to define the terms included in the constitutional provisionthat is, "sale at retail," "use," "lease," "rental," "consumption," "storage for use or consumption," "tangible personal property" and "sales of services"and not the power to define the term "cost price" as the basis for valuation of property for local taxes.
The trial court erred in interpreting the extent of the powers granted to local governments by La. Const. art. VI, § 29(A). Section 29(A) authorizes a local government to "levy and collect a tax upon the ... use... of tangible personal property ... as defined by law." (emphasis added.) Thus, while Section 29(A) granted local governments the power to levy a use tax without legislative authorization, a power that did not previously exist, the same section also reserved to the Legislature the power to define and limit the scope of all state and local sales and use taxes. In effect, the Constitution only authorized a local government to impose a use tax as defined by the Legislature, including all of the definitions and limitations in the statutes generally applicable to use taxes.[4] The Constitution did not, as the trial judge held, limit legislative power to defining the terms contained in Section 29(A). Therefore, while a local government can enact use tax legislation without legislative authorization at a rate of up to three percent, the local government must define the terms of the legislation in accordance with general state laws on use taxes. Local use tax legislation cannot go beyond the taxing limits defined by the Legislature in La.Rev.Stat. 47:301-318 (including Section 305D(1)[h]), in which the Legislature properly defined the limits of a tax on the use of personal property.
A local government, therefore, has the self-operative power to levy, or not levy, a sales and use tax upon refinery gas, and to set the rate of taxation (within the maximum rate set by the Constitution). Here, the Parish exercised its constitutional authority and enacted Ordinance No. 174, levying a one percent use tax on personal property, including refinery gas. However, the Parish exceeded its authority when it attempted to define a method of valuation of personal property which exceeded the maximum value of refinery gas fixed by the Legislature for state and local sales and use tax purposes.[5] The Parish did not have the authority to disregard the valuation method which the Legislature enacted in defining generally the limits of sales and use taxes.
We therefore reverse the portion of the judgment of the trial court declaring La.Rev. Stat. 47:305D(1)(h) unconstitutional.[6] On the remand of the case for further proceedings, the trial court at the trial on the merits shall *1329 determine the value of taxable refinery gas according to the method of valuation in La. Rev.Stat. 47:305D(1)(h).

Jurisdiction to Review Other Issues
When one part of a judgment declares a statute or ordinance unconstitutional, this court has appellate jurisdiction to review the entire judgment. After reviewing and deciding that portion of the judgment relating to the declaration of unconstitutionality, this court generally remands the case to the district court or to the court of appeal to decide the issues which one or both of the lower courts did not reach. See, e.g., New Orleans Firefighters Ass'n. Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172 (La.1991); Ly v. State of La., 633 So.2d 1223 (La.1994).
This court in the present case, having adjudicated the constitutional issue which is the sole basis for appellate jurisdiction, normally would remand the case to the court of appeal to review the remaining issues decided by the district court, over which the court of appeal would have had appellate jurisdiction but for the part of the judgment declaring the statute unconstitutional. However, this court has the jurisdictional power to review these issues and opts to exercise that jurisdictional power in this case, since most of the principal issues on the merits are so intertwined with the constitutional problem that one-step disposition is warranted.[7] Moreover, very significant amounts of money are being held awaiting final outcome, and expedition of the final disposition will allow the Parish to receive its taxes and BP to recover its refund in the amounts due to each.

Constitutionality of Ordinance No. 174
BP contended that Ordinance No. 174 was invalid because the proposition voted on by the electorate differed substantially from the ordinance subsequently adopted by the Parish.
The proposition adopted by the voters provided:
Shall the Parish of Plaquemines ... be authorized to levy and collect, and adopt an ordinance providing for such levy and collection, a tax of one percent (1%) upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption, of tangible personal property and on sales of services in the Parish, all as presently defined in R.S. 47:301 to 47:317, inclusive ...?
However, the definition of "cost price" in Section 1.04 of Ordinance No. 174 adopted by the Parish was broader than the definition of the term in La.Rev.Stat. 47:301(3)(a). Therefore, BP sought to have the ordinance declared unconstitutional, or alternatively to sever and strike Section 1.04.
The trial court denied BP's motion for summary judgment, ruling that only the terms stated in the proposition (sale at retail, etc.) had to be defined in the ordinance in the same manner as in the state statute.
The purpose of the proposition, similar to the purpose of the title of a legislative act, is to provide notice to the voters of the scope of the legislation, and not to be an index of the ordinance. Cf. Lafayette Parish Sch. Bd. v. Market Leasing Co., 440 So.2d 81 (La.1983). Here, the voters received adequate notice of the scope of the ordinance, and there is no deficiency in procedural due process.
The more significant problem is that the definition of a term (cost price) used in the method of valuation in the local use tax ordinance differed from the definition of the term in the state statute. Since we have already ruled that the method of valuation provided in the local ordinance must yield to the method expressly provided in the state statute for sales and use taxes on refinery gas, it is unnecessary to further address the constitutional issue of whether to strike the ordinance's definition of "cost price."

The Reprocessing Exclusion
BP contends that refinery gas and coke-on-catalyst are excluded from use tax by La.Rev.Stat. 47:301(10)(c), which limits the definition of "retail sale" or "sale at retail" *1330 contained in La.Rev.Stat. 47:301(10)(a) as follows:[8]
(c) The term "sale at retail" does not include sale of materials for further processing into articles of tangible personal property for sale at retail....[9]
The reprocessing exclusion was designed to eliminate the tax on the sale of a material purchased for further processing into finished products and to place the tax on the ultimate consumer of the finished product processed from the raw material. Arguing that the decision in Vulcan Refinery, Inc. v. McNamara, 414 So.2d 1193 (La.1982),[10] makes this an all-or-nothing exclusion based on the primary purpose of the purchase, BP asserts that it purchased crude oil for the primary purpose of further processing the raw material into finished products (such as gasoline) for retail sale. BP therefore argues that the reprocessing exclusion applies not only to the sale of crude oil, but also to the use of refinery gas and coke-on-catalyst which are parts of the raw material that remain after the refining.
When BP purchases crude oil as the raw material for the refinery, the event is exempt from sales tax because the crude oil is purchased for reprocessing into objects for sale at retail, such as gasoline and diesel oil. If a small portion of the crude oil were used by BP for some purpose in the refining process other than reprocessing into products for sale at retail, that portion of the crude oil arguably would not be taxable under the all-or-nothing theory urged by BP. However, it is not necessary to decide that question, because refinery gas and coke-on-catalyst are not part of the crude oil, but rather are by-products of the refining of crude oil into finished products. BP misdirects its focus on the use of the crude oil and not on the sale or use of the products and by-products of the refining of the crude oil. The focus must be on the use of the personal property sought to be excluded from taxation, rather than on the raw material which produces the personal property as a by-product of the refining process. Although the crude oil was purchased for "further processing into articles of tangible personal property for sale at retail," the use of the by-products of the processing is the event sought to be taxed in this case.[11] The refinery gas and coke-on-catalyst, once separated from the raw material, were not further processed into an end product for sale at retail. They were simply used in the processing of additional raw materials into finished products. The reprocessing exclusion was designed to place the tax on the ultimate consumer, and BP was the ultimate consumer of the refinery gas and the coke-on-catalyst. BP is seeking to avoid tax on the use of a by-product from the refining of crude oil, a by-product which BP ultimately consumed, while the ultimate consumer of the gasoline and other products of the refining of crude oil will pay sales tax on the purchase of those products. The by-products, moreover, did not become a recognizable and beneficial part of any finished product. See Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976).
We conclude that the reprocessing exclusion does not apply to BP's use of a by-product of the refining process which BP ultimately consumed as an energy source, any more than it would apply if BP purchased another energy source for the same use or if BP used one of its refined petroleum products for the same purpose that it uses refinery gas and coke-on-catalyst.[12] Accordingly, *1331 we affirm the portion of the judgment of the trial court which denied BP the reprocessing exemption.

The Energy Sources ExemptionCoke-on-Catalyst
BP contends that coke-on-catalyst was exempted from use tax by La.Rev.Stat. 47:305D(1)(h), which exempted "all energy sources when used for boiler fuel except refinery gas...." The Parish contends that the statutory exemption did not "specifically provide[] that it applies to [local] sales and use tax levies," as required by La.Rev.Stat. 33:2716.1.
The trial court held that coke-on-catalyst, when used as boiler fuel, qualified for the energy source exemption within the contemplation of Section 305D(1)(h) and that the statutory exemption applies to Ordinance No. 174 under La.Rev.Stat. 47:305D(6), which provides in part:
The exemptions from the state sales and use tax provided in this Subsection shall be applicable to any sales and use tax levied by any local governmental subdivision or school board except as otherwise specifically provided in this Subsection.
The trial judge thoroughly traced the legislative history of Section 305D(6) and correctly concluded that Section 305D(6)'s extension of exemptions to sales and use taxes levied by local governmental authorities clearly incorporated all of the exemptions listed in Section 305D(1),[13] including the exemption of energy sources when used for boiler fuel. We therefore agree that any coke-on-catalyst used by BP for boiler fuel was exempt from parish use tax.
Although the trial court ruled that coke-on-catalyst, when used as boiler fuel, was exempt from taxation, the court nevertheless denied BP's demand for a refund because BP's evidence in support of its motion for summary judgment was insufficient to establish the amount of coke-on-catalyst that was used as boiler fuel.[14]
The judgment of the trial court, rendered on motions for summary judgment, should not have dismissed BP's suits demanding refunds, but should merely have denied BP's motion for summary judgment for a specific amount of refund.[15] The denial of BP's motion for summary judgment because of failure to prove the amount of the refund merely relegated BP to proving at the trial on the merits the amount of the refund to which it is entitled for coke-in-catalyst used as boiler fuel. As to this issue, the suits should be remanded to the trial court for further proceedings.

The Energy Sources ExemptionRefinery Gas
Section 305D(1)(h), as amended in 1990 to exempt "all energy sources when used for boiler fuel except refinery gas," now clearly excepts refinery gas from the energy sources exemption. However, Section 305D(1)(h) had been amended several times during the tax assessment periods at issue in this litigation (February of 1985 to October of 1990), *1332 and the confusion created by the 1985 amendment is at the heart of this issue.
Prior to 1985, La.Rev.Stat. 47:305(4) (now 305D) exempted the following property from sales and use tax:
(vii) Natural gas;
(viii) All energy sources when used for boiler fuel except refinery gas when used for boiler fuel.
Thus, all refinery gas was taxable between February 1, 1985 and July 6, 1985, whether used as boiler fuel or not, because there was no specific exemption of refinery gas and the energy sources exemption specifically excepted refinery gas.
In 1985, a bill was filed in the Legislature to exempt refinery gas specifically. After the bill was amended several times during the legislative process, Act 258, as finally adopted, amended Subsection 305(4)(a)(vii) and (viii) to provide exemptions for:
(vii) Natural gas and refinery gas, which gas shall also be exempt from any sales and use tax levied by any local governmental subdivision or school board, except that refinery gas shall be taxable to the extent specifically hereinafter provided;
(viii) All energy sources when used for boiler fuel except refinery gas. Refinery gas used for any taxable purpose shall be subject to the tax imposed by this Chapter, and similar local taxes, provided [then follows the method of valuation of refinery gas used for any taxable purpose].
The dispute in this case involves the taxability of refinery gas used for purposes other than as boiler fuel during the period between the effective date of Act 258 and July 18, 1990, the effective date of La.Acts 1990, No. 476, which amended Subsection 305D(1)(g) (renumbered from 305[4](a)[vii]) to delete any reference in the exemption to refinery gas (leaving "[n]atural gas" as the only exemption).
The Parish contends that the Legislature in 1990 merely clarified what it intended to do in 1985; that is, to exclude refinery gas from the energy sources exemption, no matter what its use. The Parish argues that various amendments during the legislative process took away the proposed exemption and added the valuation provision of the 1985 act, causing the confusion in the final bill.
The trial court interpreted the two subsections in effect from 1985 to 1990 to exempt refinery gas except when used for boiler fuel. The court reasoned that since refinery gas was exempt under Section 305(4)(a)(vii), except to the extent it was taxable in later provisions, and Section 305(4)(a)(viii) thereafter provided that refinery gas was an exception to the exemption of energy sources used as boiler fuel, then refinery gas was only taxable when used for boiler fuel and was not taxable when used for other purposes. We agree with the trial court's interpretation.
The Legislature in 1985 arguably intended to keep refinery gas subject to sales and use taxes when it amended the original bill (designed to exempt refinery gas) by adding provisos to two subsections of the exemptions. Nevertheless, the final bill clearly did not achieve that objective. Subsection 305(4)(a)(vii) clearly exempted refinery gas, unless taxable under later provisions.[16] Subsection 305(4)(a)(viii), the later provision, merely excluded refinery gas from the exemption of energy sources used as boiler fuel. Nothing in the 1985 Act removed Subsection 305(4)(a)(vii)'s general exemption of refinery gas when that property is used for purposes other than as boiler fuel.
We therefore affirm the portion of the judgment of the trial court which exempted refinery gas when used for purposes other than as boiler fuel between July 6, 1985 and July 18, 1990, but otherwise denied the energy sources exemption for BP's use of refinery gas.

Suspensions of Tax Exemptions
During the pertinent tax assessment periods, the Legislature on several occasions suspended various tax exemptions as to a certain *1333 percentage rate of the sales and use tax. BP contends that the suspensions only applied to exemptions from state taxes and not to the exemptions from parish taxes.
The trial court observed that La. Const. art. VI, § 29(D) requires all exemptions from sales or use tax to apply uniformly to local governmental subdivisions, to school boards and to the state.[17] Noting that the suspensions do not provide specifically whether they apply to local governments and school boards as well as the state, the court concluded that the Legislature intended for the suspensions of the exemptions to apply equally to exemptions from taxes levied by all taxing authorities.
Section 29(D) requires uniformity in application of legislative exemptions from sales and use taxes, whether levied by the state or by local governments or by school boards. Thus, if the Legislature enacts an exemption from sales and use taxes, the exemption must apply to both state and local taxes. Logically, if the Legislature suspends the effect of a statutory exemption, the suspension must also apply uniformly to both state and local tax exemptions.
Pointing out that there is no requirement for uniformity of tax rates, BP argues that, at the time of the suspensions, the rate for state sales and use taxes was four percent, but the local rates varied from parish to parish, the rate under the Plaquemines Parish ordinance being one percent. Further noting that the Legislature never suspended the entire exemption from sales and use tax, BP contends that the legislative suspension of a part of the statutory exemption as to the rate of state sales and use tax, without a corresponding suspension of the exemption from local taxes, did not violate the requirement of uniformity imposed by La. Const. art. VI, § 29(D), since there was always a state exemption in effect.
When the Legislature suspended the exemption of part of the rate of the state sales and use tax, the constitutional requirement of uniformity of application mandated that a proportionate part of the rate of local sales and use tax exemptions was also suspended. Thus, if the state tax rate was four percent and the Legislature suspended the exemption on two percent, then the corresponding effect was to suspend the exemption on one-half of the local tax rate.
Because there were various types of suspensions applicable at various times, it is appropriate to remand the case to the trial court for rendition of a new judgment on this issue consistent with this opinion.

Interest on Refunds
BP contends that the rate of interest on refunds is governed by La.Rev.Stat. 33:2718A(2), while the Parish contends that Section 11.01 of Ordinance No. 174 controls. The district court concluded that the ordinance controlled because the source of taxing authority was La. Const. art. VI, § 29, and not the Legislature. The court accordingly fixed the rate at two percent per annum, as provided in the ordinance, from the date of payment to the date of refund.
As noted in the section on the constitutionality of La.Rev.Stat. 47:305D(1)(h), a local government, while constitutionally empowered to levy a local use tax without legislative authorization and to fix the rate of the tax, cannot go beyond the taxing limits set by the Legislature. In La. Rev.Stat. 33:2718A(2), which is found in the Sales Tax Section of the Chapter of Title 33 on Taxation and Fiscal Affairs, the Legislature fixed the interest rate generally on tax refunds or credits. Therefore, the Parish's fixing of the rate of interest on refunds to taxpayers on local use taxes at less than the amount fixed by the Legislature is invalid, and the statute prevails in the event of conflict.
We therefore conclude that the rate of interest on refunds due by the Parish to BP is the rate provided in La.Rev.Stat. 33:2718A(2).

*1334 Statutory Penalties

The Parish sought to impose statutory penalties for BP's delinquent payment of taxes. BP, who had paid the taxes, interest and penalty (a penalty of almost $3,000,000) under protest, contended that penalties were not applicable because it had a good-faith basis for believing that it had fully complied with its tax obligations. See St. Pierre's Fabrication Welding, Inc. v. McNamara, 495 So.2d 1295 (La.1986).
BP paid tax assessments on refinery gas at the rate provided in the state statute. Thereafter the Parish contended that the value of refinery gas should have been based on the method provided in the parish ordinance, and BP paid the revalued assessment under protest, with interest and the penalty for delinquency. BP also timely demanded a refund, including the penalty.
The judgment of the trial court, based on numerous motions for summary judgment, granted certain refunds to BP, but awarded the Parish the remainder of the funds held in the court registry. The trial court's denial of BP's motion for summary judgment on its demand for refund of the penalty should only have relegated BP to a trial on the merits on that demand. It was error for the trial court to award the Parish that portion of the funds in the court registry representing BP's payment of the penalty under protest. There clearly was a genuine issue of material fact as to BP's good-faith belief that it had fulfilled its tax obligation. That portion of the judgment of the district court must be reversed, and the matter remanded for further proceedings.

Decree
For the foregoing reasons, the judgment of the district court is modified in part as follows:
1. The portion of the judgment declaring La.Rev.Stat. 47:305D(1)(h) unconstitutional and setting the value of refinery gas in accordance with Ordinance No. 174 is reversed, the Parish's motion for summary judgment is denied, and the matter is remanded for the trial court to determine the value of taxable refinery gas in accordance with La.Rev.Stat. 47:305D(1)(h).
2. The portion of the judgment granting the Parish's motion for summary judgment and denying BP a refund for taxes on coke-on-catalyst used for boiler fuel is reversed, and the matter is remanded for further proceedings.
3. The portion of the judgment granting the Parish's motion for summary judgment and applying the suspensions of the exemptions to local use taxes is reversed, and the matter is remanded for further proceedings.
4. The portion of the judgment granting the Parish's motion for summary judgment and fixing interest on tax refunds in accordance with Ordinance No. 174 is reversed, and the matter is remanded to fix the interest in accordance with La.Rev.Stat. 33:2718A(2).
5. The portion of the judgment ordering the clerk of court to pay to the Parish the remainder of the funds in the registry of court is reversed, and the matter is remanded for further proceedings, including trial on the merits of the assessment of penalties for delinquent payment of the taxes.
In all other respects, the judgment of the district court is affirmed.
ORTIQUE, Justice, concurs in part and dissents in part, with reasons.
WATSON, Justice, dissents and assigns reasons.
ORTIQUE, Justice, concurring in part, dissenting in part.
The majority, in my view, erroneously reverses the portion of the judgment of the trial court which found La.R.S. 47:305(D)(1)(h) unconstitutional. The trial court correctly found that this statute was in conflict with Article VI, § 29(D) of the Louisiana Constitution of 1974. According to the majority, the statute establish the only proper method of valuation for sales and use taxes levied by local governments upon refinery gas. However, Article VI, § 29 has as its objective the empowerment of parishes and municipalities with self-operative authority to levy and collect taxes. Board of Directors *1335 of the Louisiana Recovery District v. Taxpayers, 529 So.2d 384, 388 (La.1988). The limitations upon the powers given to parishes and municipalities are contained within the constitutional provision. The only limitation upon local governments with respect to taxes levied pursuant to this constitutional provision is that sales and/or use taxes levied cannot exceed three percent (3%).
It is fundamental that constitutional provisions are superior to legislative acts and where such acts conflict with constitutional mandates, the statutory provisions must fall. City of Baton Rouge v. Short, 345 So.2d 37 (La.Ct.App. 2nd Cir.1977), cert. granted, 341 So.2d 411 (La.1977); Police Jury of St. Charles Parish v. St. Charles Parish Waterworks Dist. No. 2, 146 So.2d 800 (La.1962). Wherever, therefore, the rate of taxation/valuation of refinery gas as prescribed by La. R.S. 47:305(D)(1)(h) conflicts with the rate of taxation/valuation provided for by the parish ordinance enacted pursuant to the constitutional provision, the proper tax rate/value of refinery gas is that imposed by the ordinance, provided that the total sales/use tax levied does not exceed three percent (3%) maximum. In my view, therefore, La.R.S. 47:305(D)(1)(h) is unconstitutional only insofar as it constrains the local government in valuating property upon which the local government seeks to collect a tax imposed pursuant to Article VI, § 29 of the 1974 Constitution. However, if the valuation method set forth in the ordinance results in a tax which exceeds three percent (3%), that portion of the ordinance is unconstitutional. I respectfully dissent from the portion of the majority opinion reversing the judgment of the trial court on this issue.
I concur with the result of that portion of the majority opinion which reverses the trial court judgment denying BP a refund for taxes on coke-on-catalyst used for boiler fuel. The trial court's ruling is correct in view of BP's failure to establish with reasonable certitude the portion of coke-on-catalyst used as boiler fuel. The trial court must have been cognizant of the fact that a refund cannot be granted until such time as a determination can be made as to the amount of coke-on-catalyst that is taxable. Obviously, however, if a remand is in order on this issue, the trial court properly denied BP's motion for summary judgment seeking a refund in a specific amount. Therefore, I dissent as to the portion of the majority opinion which reverses the trial court's denial of BP's motion for summary judgment.
I respectfully dissent from the portion of the majority opinion reversing the trial court's judgment applying the suspensions of the exemptions to local use taxes. The Official Journal of the Constitutional Convention of 1973, Eleventh Day's Proceedings at page 27 in a comment to what is now Article VI, § 29, the following language appears: "The legislature is authorized to exempt or exclude property and services from the local sales tax provided the property and services are exempted or excluded also from the state sales tax." This comment clearly indicates an intent that exemptions and/or exclusions be the same for the state as well as local subdivisions or school boards. To hold otherwise would be contrary to the precepts set forth in Article VI, § 29 with respect to uniformity. When a court can reasonably construe a statute so as to preserve its constitutionality it must do so. Polk v. Edwards, 626 So.2d 1128 (La.1993); Moore v. Roemer, 567 So.2d 75 (La.1990); Buras v. Board of Trustees of the Police Pension Fund of the City of New Orleans, 367 So.2d 849 (La.1979); State v. Newton, 328 So.2d 110 (La.1976). Therefore, the trial court correctly held that the periods covered by the suspension of exclusions and/or exemptions of state sales/use taxes apply to local sales/use taxes as well. Consequently, BP is liable for taxes levied during the periods of suspension of exclusions and exemptions. The majority opinion is internally inconsistent, finding on the one hand that "the exemption must apply to both state and local taxes," yet, on the other hand, reversing that portion of the trial court judgment which made the same finding. Since a remand is imperative in this case for all of the reasons recited hereinabove, reversing the trial court regarding that portion of its judgment is superfluous. It is unnecessary for the majority to reverse the trial court's ruling; nevertheless, remand is appropriate however for a determination as to the *1336 amount of taxes due as a result of the suspensions.
I respectfully dissent also from that portion of the majority opinion which reverses the trial court judgment fixing interest on tax refunds in accordance with the ordinance. The Majority opines that the "Parishes fixing of the rate of interest on refunds to taxpayers on local use taxes at less than the amount fixed by the Legislature is invalid, and the statute prevails in the event of conflict." The trial court found that the two percent (2%) rate on refunds imposed by Ordinance 174 is proper. The majority posits that this is less than the amount fixed by the Legislature. La.R.S. 33:2718A(2), relied upon by the majority, provides for a rate of "not less than two per cent per annum." The interest rate contained in the ordinance is not less than two percent (2%) and is therefore in compliance with R.S. 33:2718A(2); thus I respectfully dissent from this portion of the majority opinion. I concur, however, in remanding the matter for proper calculation of both the taxes due as well as the amount to be refunded and interest thereon, if any.
In view of the need to remand this matter for further proceedings, I must concur in the reversal of the portion of the trial court judgment ordering the clerk of court to pay to the Parish the remainder of the funds in the registry of the court. Disposition of any funds held by the clerk of court must await trial court determination.
WATSON, Justice, dissenting.
Reprocessing exclusions, LSA-R.S. 47:301(10)(a) and (c) and Section 1.16 of Plaquemines Parish Ordinance 174, prohibit the taxation of refinery gas and coke-on-catalyst. When PPG refines crude oil, refinery gas and coke-on-catalyst are generated and consumed. Refinery gas and coke-on-catalyst are consequently excluded from taxation. Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976), and Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193 (La.1982).
I respectfully dissent from the majority's conclusion that coke-on-catalyst and refinery gas are not subject to the Reprocessing Exclusion.

ORDER AMENDING DECISION ON DENIAL OF REHEARING
PER CURIAM[*]
This court granted BP Oil Company's application for rehearing primarily to reconsider that part of the decision on original hearing which held that the legislative suspension of certain exemptions from state sales and use taxes also applied to suspend a proportionate amount of the exemptions from local sales taxes.[1]
On rehearing, we first consider BP's request for clarification of our judgment relating to the valuation of coke-on-catalyst. We clarify our judgment to decree that the valuation method used by the Parish was invalid, and we expressly direct the district court on remand to value the coke-on-catalyst in accordance with La.Rev.Stat. 47:301-318.
The principal issue before this court on rehearing is the effect on local use tax exemptions of the Legislature's suspension of a portion of various state sales and use tax exemptions. During the pertinent tax assessment periods, the Legislature suspended a portion of the energy sources tax exemptions *1337 provided by La.Rev.Stat. 47:305D.[2] The trial court held that La. Const. art. VI, § 29(D)[3] requires that all state sales and use tax exemptions apply equally to local governmental subdivisions, to school boards, and to the state. The trial judge supported his ruling by tracing the history of Section 29(D), concluding that the constitutional provision unambiguously mandates that legislative exemptions must apply uniformly to all areas, except where sales tax revenues had been relied upon to secure bonds. The judge further explained that logic dictates that the repeal of an exemption must also be applied uniformly. Reasoning that the suspension of an exemption has the same effect as repealing the exemption during the relevant period, the judge concluded that suspensions of exemptions must also be equally applied to local governments, school boards, and the state.
On original hearing before this court, BP contended that the legislative suspensions of exemptions applied only to state taxes and not to the Parish's use taxes, while the Parish argued that the legislative suspensions of the exemptions were applicable to both state and local taxes. This court amended the trial court's ruling, concluding that the constitutional requirement of uniformity mandated that a proportionate part of the rate of local sales and use tax exemptions was suspended when the Legislature suspended part of the exemptions from state sales and use taxes.[4]
BP's application for rehearing, and the numerous amicus briefs in support of rehearing, argued that the constitution does not mandate application of the legislative suspensions to local tax exemptions and that any uniformity requirement means uniformity within each particular type of taxing authority, or alternatively that this court's original decision requiring proportionate application of the suspensions should be applied prospectively only if upheld on rehearing.
Although La. Const. art. VI, § 29(D) grants the Legislature the discretion to exempt or exclude goods, property and services from sales and use taxes, there appears to be some requirement of uniformity in enacting the exemptions or exclusions. We have concluded, however, that we need not decide in this case the meaning or the scope of any uniformity requirement for exemptions or exclusions in Section 29(D), because the present case involves only the suspension of a law enacted by the Legislature.
La. Const. art. III, § 20 governs and limits the right of the Legislature to suspend a law by providing:
Only the legislature may suspend a law, and then only by the same vote and, except for gubernatorial veto and time limitations for introduction, according to the same procedures and formalities required for enactment of that law. After the effective date of this constitution, every resolution suspending a law shall fix the period of suspension, which shall not extend beyond the sixtieth day after final adjournment of the next regular session.
The legislative suspensions in the present case, which were done under the limited authority of Article III, § 20 for the constitutionally limited period of one year, were clearly intended to apply to state sales and use taxes only. Inasmuch as there is no requirement of uniformity in Article III, § 20, we conclude that the legislative suspensions at issue in the present case validly suspended only the exemptions from state sales and use taxes. Moreover, the legislative *1338 suspensions did not violate any uniformity requirements of La. Const. art. VI, § 29(D), because the Legislature was not enacting exemptions or exclusions, and any uniformity requirements of Section 29(D) were not applicable.
Accordingly, we amend our judgment on original hearing (1) to hold that the valuation method used by the Plaquemines Parish Government was invalid and to direct the trial court on remand to value the coke-on-catalyst in accordance with La.Rev.Stat. 47:306-318, and (2) to reverse that portion of the judgment of the trial court which decreed that the legislative suspension of exemptions from state sales and use taxes applied equally to exemptions from local taxes. The case is remanded for further proceedings consistent with our opinions on original hearing and on rehearing.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Calogero, C.J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The history of the valuation of refinery gas for sales and use tax purposes is traced in Senate Resolution No. 104 of 1985.
[2] See Title, La. Acts 1985, No. 258.
[3] BP took over the refinery in February, 1985, but its predecessors had previously paid use taxes on refinery gas at the rate provided in the 1972 administrative agreement.
[4] This court's language in denying certiorari in the Duplantis case is not applicable to the issues before the court in this case. The tax in Duplantis, which was levied under Section 29(A) after the adoption of the 1974 Constitution, conflicted in its terms with a statute that predated the Constitution and legislatively granted school boards special taxing authority. The trial court correctly held that the special statute's limitations on the use of tax revenues were not applicable to the tax levied under the school board's self-operative powers.
[5] Under the Parish's approach, a local government could prescribe a method of valuation that fixed local use taxes at greater than three percent of actual value, thereby effectively subverting the constitutional rate limitation.
[6] The Parish, in the trial court, also raised the issue of the constitutionality of La.Rev.Stat. 47:305D(1)(h) as violative of the "Origination Clause" of La. Const. art. III, § 16(B), which requires all "bills for raising revenue or appropriating money" to originate in the House. Act 258 of 1985 was not a revenue raising bill, but rather adopted a partial exemption from an existing tax and established the method of valuing the non-exempt portion, which was difficult to value because it was not purchased by the refiner or sold on the open market.
[7] For example, several interrelated constitutional issues are presented, several issues arise from the interpretation of Act 258 of 1985, and the issue of the conflict between La. Const. art. VI, § 29(A) and the statutory method of valuation also carries over into the interest issue.
[8] Because we decide that BP's use of refinery gas and coke-on-catalyst does not qualify for the reprocessing exclusion, we do not address the Parish's argument that the reprocessing exclusion does not apply to use taxes.
[9] The reprocessing exemption is also contained in Section 1.16 of Ordinance No. 174.
[10] In Vulcan Refinery, this court held that the reprocessing exclusion did not apply to coke which was bought primarily as a fuel for melting scrap iron in the manufacture of manhole covers, although a very small portion of the coke was incorporated in the final product and beneficially provided needed carbon to the product.
[11] A use tax is levied on the event (the use) and not on the property itself.
[12] If BP had taken a refined product that it otherwise would have sold and used the product as fuel in the refining process, then the use of that product certainly would have been taxable. We see no reason for different treatment of BP's use of a refinery by-product as fuel in the refining process.
[13] In 1980, the first grammatical paragraph of La.Rev.Stat. 47:305(4), which later became Section 305D, provided a specific exemption for "all energy sources when used for boiler fuel except refinery gas when used for boiler fuel." The second grammatical paragraph of the subsection provided that "[t]he exemptions from the state sales and use tax provided in this Paragraph shall be applicable to any sales and use tax levied by any local governmental subdivision or school board, except as otherwise specifically provided in this Paragraph."
[14] The affidavit of BP's plant manager asserted, on the basis of personal knowledge, that about fifteen percent of the coke-on-catalyst was used for boiler fuel. The trial court's denial was based on BP's failure to attach documents to the affidavit supporting the motion for summary judgment.
[15] The trial court granted the Parish's motion for summary judgment and dismissed BP's demand for a refund of taxes paid on the use of coke-on-catalyst, ruling that BP was not entitled to any refund for coke-on-catalyst used for boiler fuel. While BP will have the burden at the trial on the merits to prove the amount of coke-on-catalyst used for boiler fuel, the Parish had the burden on its motion for summary judgment to prove BP did not use any coke-on-catalyst for boiler fuel. Because the Parish failed to meet this burden, the Parish's motion should have been denied.
[16] It is arguable that the exception in Subsection 305(4)(a)(vii) meant that refinery gas would only be taxable under the fifty-two-cent formula in the next section, but this is only speculation and cannot be determined from the wording of the statute.
[17] La. Const. art. VI, § 29(D) provides:

(D) Exemptions; Protection of Bonds. Except when bonds secured thereby have been authorized, the legislature by law may uniformly exempt or exclude any goods, tangible personal property, or services from sales or use taxes levied by local governmental subdivisions, school boards, and the state.
[*] Pursuant to Rule IV, Part 2, § 3, Calogero, C.J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The taxes at issue were levied by the Plaquemines Parish Government on "the sale at retail, the use, the lease or rental, the consumption and the storage for use or consumption of tangible personal property...." Plaquemines Parish Ordinance No. 174, § 2.01(2) (1978). The Parish demanded payment of unpaid use taxes on all refinery gas and coke-on-catalyst used at BP's petroleum refinery during the relevant time periods at the rate set forth in Ordinance No. 174. BP paid the taxes under protest and subsequently filed four suits seeking to obtain refunds of the tax overpayments. The four actions were consolidated in the trial court and decided on cross-motions for summary judgment. One portion of the judgment of the trial court declared La.Rev. Stat. 47:305 unconstitutional, triggering the right to a direct appeal to this court. On original hearing, this court for specified reasons addressed all of the numerous issues, despite the fact that the declaration of unconstitutionality which vested this court with appellate jurisdiction did not pertain to all issues.
[2] La.Rev.Stat. 47:305D exempts certain personal property from sales and use taxes and provides that the exemptions are applicable to both state and local taxes. The Legislature thereafter provided at various times for suspensions of some of the exemptions from the state sales and use taxes.
[3] La. Const. art. VI, § 29(D) provides:

(D) Exemptions; Protection of Bonds. Except when bonds secured thereby have been authorized, the legislature by law may uniformly exempt or exclude any goods, tangible personal property, or services from sales or use taxes levied by local governmental subdivisions, school boards, and the state.
[4] According to our original opinion, if the Legislature had imposed a total of four percent in state sales and use taxes and then suspended the energy sources exemptions as to two percent of those taxes, half of the local sales and use tax exemptions for energy sources would also be suspended.