liWALTZER, Judge.
Plaquemines Parish Government (hereinafter “PPG”) appeals a judgment of the trial court on remand from the Louisiana Supreme Court. The facts are succinctly stated in BP Oil Co. v. Plaquemines Parish Government, 93-1109,1-6 (La. 9/6/94), 651 So.2d 1322, 1325-1327:
These four actions by a taxpayer against a local governing authority, seeking refunds of overpayments of local use taxes for the period between January of 1985 and October of 1990, are before the court on direct appeal from a judgment of the district court which ruled on numerous issues raised by cross-motions for summary judgment. Because one portion of the judgment declared a subsection of La. Rev.Stat. 47:305 unconstitutional, La. *537 Const. art. V, Sec. 5(D) authorizes a direct appeal to this court.
[93-1109 La. 2] The principal issues are (1) the constitutionality of La.Rev.Stat. 47:305D(1)(h), which under a 1985 amendment fixed the value of a petroleum refinery by-product for local use tax purposes; more particularly, the conflict between the legislative mandate setting the method which local governments must use to value certain property for tax purposes and the self-operative taxing power granted to local governments by La. Const. art. VI, Sec. 29; (2) the applicability of the exemption from sales and use taxes of two petroleum refinery by-products because of their use as energy sources under two subsections of the same statute, La.Rev.Stat. 47:305D(1)(g) and (h); (3) the applicability of the exclusion for reprocessing under La.Rev.Stat. 47:301(10)(c); (4) the applicability to local sales and use taxes of several legislative suspensions of statutory exemptions from sales and use taxes; and (5) the validity of the parish ordinance’s lower interest rate on tax refunds than the rate set by state statute.
Facts
BP Oil Company operated a petroleum refinery in Plaquemines Parish during the pertinent taxing periods. As part of the process of refining crude oil into petroleum products such as gasoline and diesel Uoil, BP used refinery gas and coke-on-catalyst, two by-products of the refining process, as energy sources.
Refinery gas (also called “waste” or “tail” gas) is a gaseous by-product of the process of refining the raw material, crude oil, into finished products for sale at retail. Although the refinery gas generated from BP’s refinery operations was not commercially marketable, BP scrubbed the refinery gas and used it to generate heat for boilers and other units in the refining process. BP’s efficient use of refinery gas as an energy source effected a savings in the required amount of natural gas [93-1109 La. 3] and other energy sources that BP otherwise would have had to purchase for its energy needs.
Coke-on-catalyst is a solid by-product of the refining process (coke) that accumulates on the catalyst, a solid material used to enhance chemical reactions in the refining process. As the particles of catalyst become coated with coke, the catalyst loses its effectiveness. In order to reuse the catalyst, BP burned off the coke, thereby generating heat which BP captured and used in the refining operation.
The taxes at issue in this litigation are use taxes levied by the Plaquemines Parish Government (the Parish) under Parish Ordinance No. 174 on BP’s use of refinery gas and coke-on-catalyst. The ordinance, which had been adopted in 1978, levied a tax on “the sale at retail, the use, the lease or rental, the consumption and the storage for use or consumption of tangible personal property_” Plaquemines Parish Ordinance No. 174, Sec. 2.01(2) (1978).
Prior to the 1985 legislation fixing the value of refinery gas, there had been a longstanding dispute between state and local taxing authorities and taxpayers on the issue of whether refinery gas was subject to sales and use taxes. (FN1) In 1972, the state taxing authority and the refining industry reached an administrative resolution of the dispute, agreeing that refinery gas would be taxed at four cents per 1,000 cubic feet. The parties later modified that agreement, effective January 1,1985, to fix the value at fifty-two cents per 1,000 cubic feet, subject to annual adjustment.
By La.Acts 1985, No. 258, the Legislature adopted a formula “relative to the value of refinery gas for state and local sales and use taxation.” (FN2) Act 258 amended La.Rev.Stat. 47:305, a statute pertaining to exclusions and exemptions from sales and use taxes, to rewrite Subsection D then Paragraph [4] which had [93-1109 La. 4] previously exempted from sales and use taxes “[a]ll energy sources when used for boiler fuel except refinery gas when used for boiler fuel.” The amendment changed the present Subsections D(1)(g) and (h) in several ways as discussed hereinafter, but particularly added to the energy sources exemption in the present Subsection D(1)(h) a provision fixing the value of “[rjefinery gas when used *538 for any ^taxable purpose” at fifty-two cents per 1,000 cubic feet in 1985, with an adjustment formula for ensuing years. The amendment specifically provided that “such values shall be the maximum placed upon refinery gas by any local governmental subdivision or school board under any authority or grant of power to levy and collect sales or use taxes.”
Beginning in February, 1985, BP voluntarily paid use taxes on refinery gas at that rate, (FN3) but later took the position that its refinery gas was exempt from taxation, at least in part, because of certain language in La.Rev.Stat. 47:305D(1)(g) and (h) after the 1985 amendment. BP thereafter only paid use taxes on refinery gas which was used for boiler fuel.
In 1990, the Parish, pursuant to an audit, demanded payment of $366,000 (rounded, including interest and penalty) in unpaid use taxes on refinery gas used between January 1, 1985 and March 31, 1989. Contending that refinery gas used for purposes other than as boiler fuel was exempt from taxes during the pertinent period, BP paid this amount under protest and filed Suit No. 34-001 to recover a refund plus interest.
BP later filed Suits No. 34-353 and 34-354 to recover $63,000 (rounded) and $234,-000 (rounded) in overpayments of use taxes for the periods from February 1, 1985 through June 30, 1985 and from July 1, 1985 through December 31, 1987. [93-1109 La. 5] In these actions BP contended that use taxes were only applicable to refinery gas which was used as boiler fuel.
The Parish then re-audited BP’s operations and issued an assessment of $16,334,-000 (rounded, including interest and penalty) for refinery gas, as well as coke-on-catalyst, used between January of 1985 and October of 1990. The revised assessments (1) sought for the first time to collect taxes for BP’s use of coke-on-catalyst, and (2) changed the method of valuation of refinery gas to a method under the local ordinance, based on the purchase price of crude oil, which resulted in a valuation far in excess of fifty-two cents per 1,000 cubic feet.
BP paid this amount (after credit for previous payments) under protest and filed Suit No. 34-805 to recover a refund plus interest. In this action BP claimed several exemptions from taxation and alternatively contended that any taxable refinery gas was only taxable at the value fixed by La.Rev.Stat. 47:305D(1)(h), and not at the much higher value fixed by the parish ordinance.
The four actions were consolidated in the trial court. Prior to trial, each party filed cross-motions for summary judgment.
After a hearing on the motions, the trial court rendered one judgment deciding many issues. The court declared La.Rev. Stat. |447:305D(1)(h) unconstitutional on the basis that the statute’s setting of the value at which the Parish must assess refinery gas for local use tax purposes violates La. Const. art. VI, Sec. 29(A), which grants local governments the authority to levy and collect sales and use taxes, without legislative authorization, as long as the total sales and use taxes do not exceed three percent. The court noted that limitations on matters such as the value of personal property subject to taxation may apply to legislative taxing authorizations, but are not applicable to use taxes levied by local governmental bodies under Section 29(A). The gravamen of this declaration was to recognize the [93-1109 La. 6] Parish’s right to determine its own method of property valuation for tax purposes and to approve the Parish’s use of the substantially higher valuation of refinery gas under the provisions of the Parish ordinance.
As to the other major issues, the trial court essentially rejected any refunds based on the exemptions and exclusions claimed by BP, except for the exemption of refinery gas used for purposes other than as boiler fuel during the period from June 16, 1985 to June 30, 1986. The court awarded BP a refund based on this exemption, plus interest on the refund at the rate of two percent, as provided in the ordinance. BP’s other claims for refunds were dismissed.
Both parties appealed to this court from the judgment.
*539 Upon review, the Louisiana Supreme Court issued a multi-part decree, noting that:
BP paid tax assessments on refinery gas at the rate provided in the state statute. Thereafter the Parish contended that the value of refinery gas should have been based on the method provided in the parish ordinance, and BP paid the revalued assessment under protest, with interest and the penalty for delinquency. BP also timely demanded a refund, including the penalty.
The judgment of the trial court, based on numerous motions for summary judgment, granted certain refunds to BP, but awarded the Parish the remainder of the funds held in the court registry. The trial court’s denial of BP’s motion for summary judgment on its demand for refund of the penalty should only have relegated BP to a trial on the merits on that demand. It was error for the trial court to award the Parish that portion of the funds in the court registry representing BP’s payment of the penalty under protest. There clearly was a genuine issue of material fact as to BP’s good-faith belief that it had fulfilled its tax obligation. That portion [93-1109 La. 21] of the judgment of the district court must be reversed, and the matter remanded for further proceedings.
Decree
l5For the foregoing reasons, the judgment of the district court is modified in part as follows:
1.The portion of the judgment declaring La.Rev.Stat. 47:305D(l)(h) unconstitutional and setting the value of refinery gas in accordance with Ordinance No. 174 is reversed, the Parish’s motion for summary judgment is denied, and the matter is remanded for the trial court to determine the value of taxable refinery gas in accordance with La.Rev. Stat. Jf7:S05D(1)(h). (Emphasis added).
2. The portion of the judgment granting the Parish’s motion for summary judgment and denying BP a refund for taxes on coke-on-catalyst used for boiler fuel is reversed, and the matter is remanded for further proceedings.
3. The portion of the judgment granting the Parish’s motion for summary judgment and applying the suspensions of the exemptions to local use taxes is reversed, and the matter is remanded for further proceedings.
4. The portion of the judgment granting the Parish’s motion for summary judgment and fixing interest on tax refunds in accordance with Ordinance No. 174 is reversed, and the matter is remanded to fix the interest in accordance with La.Rev.Stat. 33:2718A(2).
5. The portion of the judgment ordering the clerk of court to pay to the Parish the remainder of the funds in the registry of court is reversed, and the matter is remanded for further proceedings, including trial on the merits of the assessment of penalties for delinquent payment of the taxes.
[93-1109 La. 22] In all other respects, the judgment of the district court is affirmed.
|6On remand the trial court considered the issue of valuation of taxable refinery gas and issued the following judgment [1] which is the subject of the instant appeal:
*540 Considering the Motion of BP Oil Company for a Judgment Ordering the Refund of an Amount of Taxes, Interest, and Penalties Relating to Refinery Gas, the Order to Grant Refund of Tax, Interest, and Penalty to BP Oil Company previously rendered on March 2, 1995, and the argument of counsel,
IT IS ORDERED, ADJUDGED AND DECREED that the Clerk of Court for the Parish of Plaquemines shall pay to BP Oil Company the total amount of $1,632,-568.96; together with interest accruing from January 31, 1995 at the rate of $300.92 per day. Said payment shall be paid out of the funds currently held in the registry of this Court pursuant to the Consent Judgment rendered herein dated April 22,1991. Said payment represents a refund of all tax, interest and penalty paid under protest by BP Oil Company relating to the use of refinery gas together with interest on the said payments under protest according to the provisions of La.R.S. 33:2718, for the time period from January 1, 1985 to July 5,1985.
PPG appeals, raising one specification of error:
The trial court erred in retroactively applying Act No. 258 of 1985, effective July 6, 1985, to the time period from January 1 through July 5,1985.
I7BP Oil argues that the appellant mischar-acterizes the situation as one of retroactivity, whereas the trial court was merely following the express statement of the Supreme Court in the prior case. We agree.
The Supreme Court decree stated that “the matter (wa)s remanded for the trial court to determine the value of taxable refinery gas in accordance with La.Rev.Stat. 47:305D(1)(h).”
Prior to Act 258 of 1985, there was no LSA-R.S. 47:305D(1)(h). The statute as it existed prior to the Act was designated LSA-R.S. 47:305(4)(a)(vii) and (viii).
LSA-R.S. 47:305(4)(a)(vii) and (viii) read as follows:
(4) The ... use, the consumption, ... in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter:
(vii) Natural Gas;
(viii) all energy sources when used for boiler fuel except refinery gas when used for boiler fuel.
After the amendment by Act 258 of 1985, the statute was renumbered and reads as follows:
D.(l) The ... use, the consumption, ... in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter.
(h) All energy sources when used for boiler fuel except refinery gas. Refinery gas used for any taxable purpose shall be subject to the tax imposed by this Chapter, and similar local taxes, provided that its value shall be fifty-two cents per thousand cubic feet for the taxable period beginning July 1, 1985. For each succeeding calendar year thereafter the value of refinery gas shall be the product of fifty-two cents multiplied by a fraction the numerator of which shall be the posted price for a barrel of West Texas Intermediate Crude Oil on December first of the preceding calendar year, and the denominator of which shall be twenty-nine | gdollars, and provided further that such values shall be the maximum placed upon refinery gas by any local governmental subdivision or school board under any authority or grant of power to levy and collect sales or use taxes.
Additionally, the trial court’s application of the valuation formula of Act 258 of 1985 reinforces Senate Concurrent Resolution No. 104 of 1985 which provides:
WHEREAS, the Legislature does hereby take cognizance of the dispute over the years as to whether refinery gas (often also called “oil refinery waste gas” or “oil refinery tail gas”) is subject to sales or use taxes; and
*541 WHEREAS, the Legislature does hereby recognize the administrative resolution of that dispute arrived at by the Department of Revenue in 1972 and followed by the local taxing jurisdictions thereafter, which fixed the value of such refinery waste gas at four cents per thousand cubic feet; and
WHEREAS, the Legislature does hereby recognize that this agreement was modified effective January 1, 1985 to take into consideration the current value of such refinery gas and fixed the value of refinery waste gas at fifty-two cents per thousand cubic feet for sales and use tax purposes, subject to annual adjustment.
THEREFORE, BE IT RESOLVED that the Legislature of Louisiana declares the value of refinery waste gas to have been four cents per thousand cubic feet for the period from 1972 until January 1, 1985 and fifty-two cents per thousand cubic feet from that date forward, subject to heretofore agreed upon annual adjustments.
The Supreme Court was well aware that the taxing periods at issue pre-dated the effective date of the Act: “between January 1, 1985 and March 31, 1989 ... from the periods from February 1, 1985 through June 30, 1985 and from July 1, 1985 through December 31, 1987 ... between January of 1985 and October of 1990.” BP Oil, supra at 4-5, 1326. Knowing that some of the taxing period predated the effective date of the Act, the Court nonetheless ordered the trial court to use the formula in the post-amendment statute. This holding is consistent with the Court’s ruling that local governments cannot set a method of valuation which exceeds the valuation ceiling by the state. It further gives effect to the 19administrative settlement between the State Department of Revenue and Taxation and BP Oil, which was in effect for the time period January 1, 1985 — July 5, 1985. Accordingly we find that the trial court did not err.
For the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.

BARRY, J., concurs with reasons.

. In a Per Curiam entitled "Order Amending Decision on Denial of Rehearing” the Supreme Court revisited its decision for "clarification of our judgment relating to the valuation of coke-on-catalyst”. The court further stated:
The legislative suspensions in the present case ... were clearly intended to apply to state sales and use taxes only. Inasmuch as there is no requirement of uniformity in Article III, Sec. 20, we conclude that the legislative suspensions at issue in the present case validly suspended only the exemption from state sales and use taxes. Moreover, the legislative suspensions did not violate any uniformity requirements •... because the Legislature was not enacting exemptions or exclusions ... Accordingly, we amend our judgment on original hearing ... (2) to reverse that portion of the judgment of the trial court which decreed that the legislative suspension of exemptions from state sales and use taxes applied equally to exemptions from local taxes. (At 93-1109,4; 1339-1338).
The language in the "Order Amending Decision on Denial of Rehearing” does not apply to the refinery gas issue because refinery gas was never exempted from taxation in the first place, hence the suspension of exemptions is irrelevant. *540 LSA-R.S. 47:305(D)(l)(h) exempted "all energy sources ... except refinery gas”.