667 So.2d 1219 (1996)
STATE of Louisiana, and Ralph Slaughter, Secretary, Department of Revenue and Taxation, State of Louisiana
v.
BP EXPLORATION & OIL INC.
No. 95-CA-2031.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1996.
Rehearing Denied February 22, 1996.
*1220 Richard P. Ieyoub, Attorney General, E. Kay Kirkpatrick, Assistant Attorney General, Emory A. Belton, Assistant Attorney General, Baton Rouge and St. Martin & Lirette, Michael X. St. Martin, Michelle Mayne Davis, Houma and Cossich & Associates, Philip F. Cossich, Jr., Les A. Martin, Belle Chasse, for Plaintiffs/Appellants, State of Louisiana and Ben Morrison, Secretary, Department of Revenue and Taxation, State of Louisiana.
George J. Domas, Robert S. Angelico, Dena L. Oliver, Cheryl Mollere Kornick Liskow & Lewis, New Orleans, for Defendant-Appellant, BP Exploration & Oil, Inc.
Judy Y. Barrasso, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans and Hal K. Dickenson, Catherine L. Zabel, Houston, Texas, Amicus Curiae-Marathon Oil Company.
Frank P. Simoneaux, Joell M. Keller, Simoneaux & Carlton, Baton Rouge, Amicus Curiae-Citgo Petroleum Corporation.
David R. Cassidy, David R. Kelly, Leo C. Hamilton, Breazeale, Sachse & Wilson, Baton Rouge and John F. Whitney, Breazeale, Sachse & Wilson, New Orleans, Amicus Curiae-Star Enterprise.
Jesse R. Adams, Jr., Bruce J. Oreck, Jesse R. Adams, III, Law Offices of Adams and Johnston, New Orleans, Amici Curiae-Mobil Oil Corporation and Murphy Oil USA, Inc.
Before BARRY, KLEES and WALTZER, JJ.
KLEES, Judge.
This appeal originated from a lawsuit filed by the State of Louisiana and Ralph Slaughter, (the former) Secretary, Department of Revenue and Taxation (State), in December of 1994, against B.P. Exploration & Oil, Inc. (BP), seeking to collect use and sales taxes allegedly owed on two by-products of the refining process, namely, refinery gas and coke-on-catalyst.[1]
In response to the petition for past due taxes, BP filed several exceptions, including one of prescription. BP excepted to the State's petition seeking to collect taxes for any time period prior to January 1, 1992, or alternatively, prior to January 1, 1991. It claimed that the statutory time limitations *1221 for collecting the taxes had run. The State opposed the Exception of Prescription claiming that BP had executed a waiver in August of 1993 suspending prescription on taxes owed for 1989 and 1990, or until December 31, 1994. The court denied or dismissed as moot all of the exceptions but the exception of prescription, which it referred to the merits at trial.
On June 15, 1995, the court heard motions for summary judgment filed by both parties. The State sought summary judgment on the issue of whether the exemption created by La.R.S. 47:305(D)(1)(h) was suspended, and if so, whether BP should be taxed for its use of refinery gas based upon its true cost price. BP opposed the State's motion and filed its own motion for partial summary judgment moving the court to declare that La.R.S. 47:305(D)(1)(h) was not an exemption at all, but rather a valuation provision, and that therefore, BP had properly paid all taxes owed on its use of refinery gas.
The trial court granted the State's motion for partial summary judgment and denied BP's motion. The court found La.R.S. 47:305(D)(1)(h) to be an exemption from taxation for use of refinery gas, that the exemption had been suspended, and that therefore, BP owed taxes on its use of refinery gas to the extent the value of the refinery gas exceeded that set forth in La.R.S. 47:305(D)(1)(h). BP appealed that decision.
On August 1, 1995, the trial of this matter began. The issues to be decided at trial were: 1) BP's exception of prescription; 2) the tax years in which BP owed taxes; 3) the taxable value of refinery gas and coke-on catalyst; 4) the amount of interest owed on any taxes due; 5) the penalties owed on any taxes due; and 6) the amount of attorney's fees due for collection of the taxes.
The court rendered judgment on August 9, 1995. The court found in favor of the State in the amount of $11,100,870.00, representing taxes, interest and attorney's fees from December 1, 1990 through July 20, 1995. To arrive at this figure, the court valued refinery gas and coke-on catalyst at a cost comparable to the value of natural gas. It also found in favor of the State for additional interest and attorney's fees from July 20, 1995, as provided by statute. The court declined to assess penalties for the unpaid taxes. Finally, the court granted BP's exception of prescription for the tax periods December 1, 1988 through November 30, 1990, but overruled its exception for the tax period December 1, 1990 through November 30, 1991. The State has appealed the granted portion of BP's exception of prescription. BP has appealed only issues 2, 3 and 6 above.

MOTIONS FOR PARTIAL SUMMARY JUDGMENT
BP has appealed the trial court's granting of the State's motion for partial summary judgment. The trial court held that La.R.S. 47:305(D)(1)(h) is an exemption that was suspended by the legislature. We affirm on this issue.
First, we agree with BP that the interpretation of La.R.S. 47:305(D)(1)(h) is a pure question of law. The State argues that this is a mixed question of law and fact and that therefore, this court should use a manifest error standard. However, the question of fact, that is, the factual determination of the value of the refinery gas, was made at the trial, after the court had ruled on the issue of whether the statute was an exemption. Thus, the motion for summary judgment only addressed the purpose of the statute and was, as such, a question of law.
Appellate courts apply a de novo standard of review when considering trial court's judgments on motions for summary judgment, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, the appellate court must determine whether "the pleadings, depositions, answers to interrogatories and admissions, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law." La. C.C.P. art. 966(B); Schroeder, 591 So.2d at 345. Appellate review of a question of law is simply whether the court's interpretive decision is legally correct. Phoenix Assur. Co. of *1222 New York v. Shell Oil Co., 611 So.2d 709 (La.App. 4th Cir.1992).
After reviewing the oral reasons for judgment[2], we agree with the trial judge's interpretation of the statute; La.R.S. 47:305(D)(1)(h) is an exemption, not a valuation statute. The trial court chose not to ignore the fact that La.R.S. 47:305(D)(1)(h) is contained under the section title "Exclusions and exemptions from tax," as was suggested by BP. The trial court stated: "... I look at the title of 305.1; 305.2; 305.3, all the way through 305.47. Each and every one is entitled, `Exclusions and Exemptions.' This statute, I don't believe, is stuck in a statutory scheme under Chapter 2, `Sales Tax,' in a section with 47 subparts, each entitled, `Exclusions and Exemptions,' by accident. It is put in there because it is a statute establishing exclusions and exemptions from sales taxes."
The trial court also relied heavily on the decision reached by the Supreme Court in BP Oil Co. v. Plaquemines Parish Gov't, 93-1109 (La. 9/6/94), 651 So.2d 1322, on reh'g, (La. 10/13/94). Although that case involved parish sales and use taxes, the Court thoroughly discussed the legislative history of La.R.S. 47:305(D)(1)(h). The trial court pointed out several sections of the opinion in which the Court referred to the statute as an exemption. For example, the Court outlined the issues presented for review. The second issue was: "(2) the applicability of the exemption from sales and use taxes of two subsections of the same statute, La.Rev.Stat. 47:305(D)(1)(g) and (h)." The fourth issue was: "(4) the applicability to local sales and use taxes of several legislative suspensions of statutory exemptions from sales and use taxes." Id. at p. 2; 1325. Although the Court was reviewing the statute in light of a local ordinance assessing taxes, it nonetheless discussed the statute's history and purpose, and more pointedly, continually referred to it as an exemption.
The trial court also relied upon the Supreme Court's interpretation of La.Acts 1985, No. 258. The Court stated:
By La.Acts.1985, No. 258, the Legislature adopted a formula `relative to the value of refinery gas for state and local sales and use taxation.' Act 258 amended La.Rev. Stat. 47:305, a statute pertaining to exclusions and exemptions from sales and use taxes, to rewrite Subsection D (then Paragraph [4]) which had previously exempted from sales and use taxes `[a]ll energy sources when used for boiler fuel except refinery gas when used for boiler fuel.' The amendment changed the present Subsections D(1)(g) and (h) in several ways as discussed hereinafter, but particularly added to the energy sources exemption in the present Subsection D(1)(h) a provision fixing the value of `[r]efinery gas when used for any taxable purpose' at fifty-two cents per 1,000 cubic feet in 1985, with an adjustment formula for ensuing years.
Id. at p. 3-4; 1326. The Supreme Court further accepted the trial court's interpretation of the two subsections (D)(1)(g) and (h): "... since refinery gas was exempt under Section 305(4)(a)(vii), except to the extent it was taxable in later provisions, and Section 305(4)(a)(viii) thereafter provided that refinery gas was an exception to the exemption of energy sources used as boiler fuel, then refinery gas was only taxable when used for boiler fuel and was not taxable when used for other purposes." Id. at p. 17; 1332.
The Supreme Court reversed itself on rehearing as to a portion of the original judgment.[3] However, the trial court correctly noted that the reversal did not change the essence of the original ruling. The only issue on rehearing was whether or not the suspension of certain sales and use taxes by the legislature applied to local use taxes. The Supreme Court's reasoning and analysis as to whether or not La.R.S. 47:305(D)(1)(h) is an exemption was unchanged by the opinion on rehearing. We therefore conclude that the trial court's interpretation of the *1223 statute was legally correct, and affirm the judgment granting the State's motion for partial summary judgment.

TRIAL ON THE MERITS:
As stated above, the issues at trial were: 1) BP's exception of prescription; 2) the tax years in which BP owed taxes; 3) the taxable value of refinery gas and coke-on-catalyst; 4) the amount of interest owed on any taxes due; 5) the penalties owed on any taxes due; and 6) the amount of attorney's fees due for collection of the taxes.

Exception of Prescription:
In support of its exception BP cited Article 7, Section 16, of the Louisiana Constitution. That article provides that "[t]axes, except real property taxes, and licenses, shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law." BP claimed that the State did not take any action to interrupt prescription until March of 1995. It made this claim based on two theories. First, it cited La.R.S. 47:1580, which states in pertinent part:
A. The prescription running against any state tax, license, excise, interest, penalty, or other charge shall be suspended by any of the following:
(1) The secretary's action in assessing any such amounts in the manner provided by law.
(2) The filing of a summary proceeding in court.
(3) The filing of any pleading, either by the secretary or by a taxpayer, with the board of tax appeals or any state or federal court.
BP stated that the secretary did not make any assessment against it and the petition filed in December of 1994 was an ordinary (not summary) proceeding. Second, subpart (A)(3) was not satisfied because the petition filed in December was not authorized by the Secretary and therefore did not interrupt prescription. Therefore, the amended petition filed in March of 1995 was the first pleading filed which could effectively interrupt prescription.
The State opposed the exception introducing into evidence a waiver signed by BP in August of 1993. The State claimed that the waiver effectively suspended prescription for all taxes owed for 1989 and 1990, or until December 31, 1994.
In its ruling, the trial court rejected BP's contentions that the filing of the ordinary proceeding in December of 1994 was not authorized by the State. The court considered the testimony of the former secretary of revenue, Ralph Slaughter; and Governor Edwin Edwards. There was also documentary evidence of a contract of employment between private counsel and the State. The Court therefore found that the lawsuit filed in December of 1994 was authorized, and thus, prescription was effectively interrupted as per La.R.S. 47:1580(A)(3).
The court also rejected the State's contention that the 1993 waiver suspended prescription. The judge stated that testimony revealed that an audit was conducted, an assessment was made, the taxes were paid and the audit was closed. The court found that the State failed to establish that there was a suspension of prescription particularly related to the collection of taxes as alleged to be due in this matter.
On appeal, the State raises two issues. First, that the trial court erred in placing the burden on the State to establish that there had been a suspension of prescription. Second, even if this court should find that the burden was properly placed on the State, the trial court erred because a review of the waiver document in question would reveal that BP agreed to suspend prescription on all taxes it owed for the tax periods at issue.
The trial court reasoned that because the State chose to prosecute this case as an ordinary proceeding, then the rules governing ordinary proceedings should apply. We agree and thus find no error with the court's allocating the burden of proof to the State.
The State's opposition to BP's exception centers around a waiver of prescription signed by an officer of BP in August of 1993. The State asserts that the waiver is clear and unambiguous and therefore, the court can *1224 rely only on the contents within the four corners of the document. The waiver states that B.P. Exploration & Oil, Inc., waives prescription on all taxes owed by it for the tax years 1989 and 1990. BP argues that it can introduce parol evidence to prove the true intent of the parties when entering into the agreement.
BP contends that the waiver in question was executed pursuant to an audit of its exploration activities being conducted by the State at BP's plant in Houston. At the time the audit began, B.P. Exploration was a separate legal entity. During the course of the audit, the State realized that it would not be able to complete the audit before the end of the prescriptive period, and requested BP to sign the waiver in question. However, in the interim between the beginning of the audit and the request for the waiver, B.P. Exploration merged with B.P. Oil. Therefore, the proper legal entity to sign the waiver was B.P. Exploration and Oil, Inc. BP's position was that it intended that the waiver only pertain to any taxes which might be due in connection with the audit of its exploration activities, not its refining activities. Thus, the waiver should not extend to prescriptive periods for the taxes at issue in the present case.
In its argument, the State declares that "the waiver signed in this instance was entity specific, i.e., it pertained to all sales and use taxes due by BP Exploration & Oil, Inc., for January 1, 1989 to December 31, 1990." The State cites La.C.C. art. 2046 and numerous cases for the proposition that when the words of a contract are clear and unambiguous, a court cannot look further than the four corners of the document to determine the parties' intent. BP, on the other hand, cites to several cases where courts held that parol evidence is admissible to establish that the words of the contract do not represent the true intent of the parties. Without attempting to resolve the seemingly conflicting jurisprudence, we determine that in the interest of justice, parol evidence should be allowed under the circumstances of this case.
Accordingly, we find that the trial judge did not err in admitting the parol evidence to establish the true intent of the parties. After hearing the conflicting testimony, the trial judge made a credibility determination and held, as a finding of fact, that the waiver signed by BP only applied to the taxes in question relative to the audit of the exploration activities of the company. We cannot say that the trial court was manifestly erroneous in this factual finding, and therefore affirm the judgment of the trial court in which BP was found to owe use taxes beginning December 1, 1990.

Taxable Value of Refinery Gas and Coke-on Catalyst:
Because the district court granted summary judgment determining that La.R.S. 47:305(D)(1)(h) was an exemption that was suspended by the legislature, the main remaining issue at trial was the taxable value of refinery gas and coke-on catalyst.
The basis for Louisiana's use tax is the cost price of the property. La.R.S. 47:302(A)(2). Cost price is defined as the lesser of (1) the actual cost of the property; or (2) the reasonable market value of property at the time it becomes susceptible to the use tax. La.R.S. 47:301(3)(a).
The trial court determined that the actual cost of refinery gas and coke-on catalyst could only be determined by examining the price paid for the crude oil from which the two by-products are derived. The court stated that it applied formulas supplied by witnesses in the case to arrive at the actual cost of refinery gas and coke-on catalyst. The court then calculated the reasonable market value of the by-products, defining reasonable market value as the amount a willing seller would receive from a willing buyer in an arm's length exchange of similar property at or near the location of the property being valued. The court stated in its oral reasons for judgment that, based on the voluminous evidence presented, the appropriate "similar property" to use to make the calculation is natural gas. The court then determined that the use tax value for both refinery gas and coke-on catalyst should be equal to natural gas on an energy equivalent basis. The court pointed out that its theory on how to calculate the use tax was not novel:

*1225 Now this concept or this comparison, that is to compare the value of natural gas rather to compare the value refinery gas and coke on catalyst to natural gas, is not a creation of the attorneys for the State. It is not an imaginative creation of the Secretary of Revenue and Taxation. It is not an ingenious device concocted by the Court in an effort to do justice and equity in a court of law. It is a method of evaluation or valuation which has its origin in the petroleum industry. The testimony and evidence in this case clearly establishes that if (sic) there is nothing extreme, radical or unusual about determining the value of these two refinery products based on natural gas. As we travel through the testimony adduced during the course of this lengthy trial, we can see that it is the only natural conclusion which can be drawn.
The court then analyzed the testimony of employees of BP and similar refineries. That testimony revealed that refinery gas and coke-on catalyst has been valued either at a crude oil or natural gas value based upon a BTU equivalent. The court addressed the expert testimony, pointing out that both sides made excellent arguments for their position. The court noted that if it had to rely only on expert testimony, its decision would have been much more difficult. However, the wealth of lay testimony by long-time workers in the refining industry made the court's job easier. Because of this testimony, the court ruled that there was "more than substantial and ample basis for [it] to draw the conclusion that natural gas is an energy equivalent to [refinery gas and coke-on catalyst] for the computation of the taxes that are due in this matter."
BP argues that the trial court did not correctly apply the reasonable market value definition because natural gas is not similar to refinery gas and coke-on catalyst for purposes of the comparison. BP states that the court, in effect, used a "use value" standard, use value being the value of a particular item or article of property to a particular owner or user. Jeff Litvak, an expert for BP, testified that use value could be described as such:
A person's used, broken-down automobile which nonetheless transports its owner to and from work every day has a "use value" to the owner. However, if the owner were to take that automobile to a used car dealer, the reasonable market value of that vehicle would probably not equal or approach the use value the automobile has for the owner. And, even though that old, used car is used by the person for transportation to and from work, its reasonable market value is certainly far less than the value of a premium, mint-condition, new vehicle used for the same purpose.
BP argues that the court illogically reasoned that BP could sell the two by-products in arm's length transactions for a price equal to the market price of natural gas just because they are all used as fuels. BP argues that this conclusion is absurd because natural gas is a very valuable commodity that can be sold on the open market. Refinery gas, on the other hand, is contaminant-laden, cannot be easily transferred, and is not readily marketable. Coke-on catalyst is also not comparable to natural gas because it is a solid, not a gas; and, it is primarily used to clean the catalyst, not as a fuel source.
This argument, however, ignores the decision by the Supreme Court in the BP Oil Co. case. The Court defined refinery gas as "a gaseous by-product of the process of refining the raw material, crude oil, into finished products for sale at retail. Although the refinery gas generated from BP's refinery operations was not commercially marketable, BP scrubbed the refinery gas and used it to generate heat for boilers and other units in the refining process. BP's efficient use of refinery gas as an energy source effected a savings in the required amount of natural gas and other energy sources that BP otherwise would have had to purchase for its energy needs." 93-1109, La. p. 2-3; 651 So.2d at 1325. Obviously, the Supreme Court found that refinery gas was comparable to natural gas and was a valuable commodity to BP.
The Court defined coke-on catalyst as: "a solid by-product of the refining process (coke) that accumulates on the catalyst, a solid material used to enhance chemical reactions in the refining process. As the particles *1226 of catalyst become coated with coke, the catalyst loses its effectiveness. In order to reuse the catalyst, BP burned off the coke, thereby generating heat which BP captured and used in the refining operation." Id. Again, the Court recognized coke-on catalyst as a valuable commodity.
BP however, argues that coke-on catalyst is unique and is neither transferable nor marketable, therefore the trial court could not accurately compare it to natural gas. While we agree that coke-on catalyst is not a commodity that can be sold on the open market, it nonetheless generates heat which BP captures and uses as energy source. If BP did not have this energy source, it would have to use another source. The testimony of the employees of BP revealed that that source would more than likely be natural gas. We therefore find that it was reasonable for the trial court to use natural gas as the "similar product" to determine reasonable market value of refinery gas and coke-on catalyst.
It is obvious to this court that the trial judge carefully weighed the evidence and testimony presented by the parties. Thus, we cannot say that the trial court was clearly wrong or manifestly erroneous in its ruling. Accordingly, we affirm the trial court's judgment determining the cost value of refinery gas and coke-on catalyst.

Attorney's Fees:
BP argues on appeal that the trial court erred in mechanically applying the statutory ten percent formula for attorney's fees found in La.R.S. 47:1512. It claims that the trial court did not take any evidence on this issue, and therefore could not know the actual amount of work performed by the attorneys for the State to determine the reasonableness of the fee. The State argues that the court did examine the evidence presented at trial when determining the reasonableness of the fee.
BP cites City of Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397 (La. 1987) as support for its argument. In that case, the trial court ruled that La.R.S. 47:1512 was unconstitutional because the Supreme Court has sole authority to regulate the practice of law, including attorney's fees, and therefore, the legislature cannot override that authority by mandating attorney's fees. The Supreme Court held that the provisions of the statute did not per se conflict with the Court's exclusive constitutional authority to regulate the practice of law. A conflict would arise only if the fees fixed by statute are excessive and unreasonable. Thus, La. R.S. 47:1512 is not unconstitutional on its face. However, fees awarded under the statute are subject to judicial scrutiny on a case by case basis to determine the reasonableness of the fee. Id. at 401.
The Court pointed to the factors listed in the disciplinary rules to consider the excessiveness of a fee:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment would preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and the length of time of professional relationship with the client;
(7) the experience, reputation and ability of the lawyer or lawyers performing the service; and
(8) whether the fee is fixed or contingent.
Id. at 400. Thus, we must determine if the trial court applied these factors before assessing the attorney's fees in this case.
In his oral reasons for judgment, the trial judge stated that he did apply the above factors:
The Court has decided (sic) over a lengthy complicated piece of litigation involving tremendously intricate and in some case novel areas of law. The Court is intimately aware of the tremendous amount of effort in terms of time; interestI better not use the adjective that I am thinking of *1227 now. But, of the efforts extended by the Counsel for the State in this matter. And the Court cannot find that the 10% figure mandated by the statutory scheme is unreasonable. The Court make[] the contrary finding that it is indeed reasonable in view of those factors which the Court has just recited.
We cannot say that the trial court was clearly wrong in his award of attorney's fees. He applied the factors as set out in the disciplinary rules, and additionally, was in a much better position to assess the amount of work performed by the State's attorneys. Therefore, we affirm the award of attorney's fees.
On appeal, BP assigns as error the trial court's retroactive application of the Supreme Court's decision in BP Oil Co. BP argues that the State recognized the major change in the law created by the decision and affirmatively represented to the refining industry that it would not tax the use of coke-on catalyst for any periods prior to the decision. Thus, BP contends that the State is now estopped from retroactively collecting taxes prior to the date of the decision. The State argues that the Supreme Court held in the BP Oil Co. case that the decision would have retroactive effect.
We do not agree that the decision in the BP Oil Co. case affected a major change in the law; it interpreted a major change in the law. Thus, the legislative suspension of La. R.S. 47:305(D)(1)(h) is to be applied prospectively from the date of the suspension. The trial court recognized this also, and made its calculation accordingly. We affirm that portion of the judgment.
For the reasons set forth above, we affirm the judgment of the trial court.
AFFIRMED.
BARRY, J., dissents in part and concurs in part with reasons.
BARRY, Judge, dissenting in part and concurring in part with reasons.
The majority holds that La.R.S. 47:305(D)(1)(h) is an exemption, not a valuation statute. I believe § 305(D)(1)(h) provides an exemption, excepts refinery gas from that exemption, and sets a valuation formula for taxation of refinery gas. Thus, the valuation provision for refinery gas remains in effect, whether or not there is in effect a legislative suspension of exemptions.
La.R.S. 47:305(D)(1) provides in pertinent part:
§ 305. Exclusions and exemptions from the tax
D. (1) The sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter:
* * * * * *
(g) Natural gas.
(h) All energy sources when used for boiler fuel except refinery gas. Refinery gas shall be subject to the tax imposed by this Chapter, and similar local taxes, provided that its value shall be.... [The statute then sets forth a formula to determine the value of taxable refinery gas.]
BP Oil Co. v. Plaquemines Parish Gov't, 93-1109 (La. 9/6/94), 651 So.2d 1322 (cited by the majority and both parties), considered the constitutionality and scope of La.R.S. 47:305(D)(1)(h) and that statute's effect on the Parish's taxing authority for the tax period between January 1985 and October 1990 (prior to the tax period at issue here). The Parish sought to tax refinery gas at a higher rate than that provided in § 305(D)(1)(h). BP paid the Parish tax under protest then filed suit to recover a refund. BP claimed several exemptions and alternatively argued that any taxable refinery gas was limited to the value fixed in § 305(D)(1)(h) rather than the higher value set by the Parish.
BP Oil Co. held § 305(D)(1)(h) is constitutional. Specifically, § 305(D)(1)(h)'s valuation formula for refinery gas does not infringe on the Parish's constitutional power to levy and collect a tax upon the use of tangible personal property (La. Const. art. VI, § 29(A)). BP Oil Co., 651 So.2d at 1328. The Court remanded to "determine the value of taxable refinery gas according to the method of valuation in La.Rev.Stat. *1228 47:305(D)(1)(h)." BP Oil Co., 651 So.2d at 1329.
The Court then examined the applicability of exemptions under § 305(D)(1)(h) to local sales and use tax during the tax period at issue.
The Court traced the history of § 305(D)(1)(h) and noted that prior to the 1985 amendment, all refinery gas was taxable "because there was no specific exemption of refinery gas and the energy sources exemption [47:305(4)(viii), see now 47:305(D)(1)(h)] specifically excepted refinery gas." BP Oil Co., 651 So.2d at 1332. Prior to 1985, La. R.S. 47:305(4) [see now 305(D)] exempted:
(vii) Natural gas;
(viii) All energy sources when used for boiler fuel except refinery gas when used for boiler fuel.
Acts 1985, No. 258 amended § 305(4) [see now 305(D)] to exempt refinery gas unless taxable under a later provision, i.e., when used as boiler fuel. The amended statute provided exemptions for:
(vii) Natural gas and refinery gas, which gas shall also be exempt from any sales and use tax levied by any local governmental subdivision or school board, except that refinery gas shall be taxable to the extent specifically hereinafter provided;
(viii) All energy sources when used for boiler fuel except refinery gas.... Refinery gas used for any taxable purpose shall be subject to the tax imposed by this Chapter [provided it is valued according to the valuation provision of this Subsection].
Thus, under the 1985 amendment (until the 1990 amendment) refinery gas was only taxable when used for boiler fuel and was not taxable when used for other purposes. BP Oil Co., 651 So.2d at 1332.
The history of § 305 and the Supreme Court's interpretation of the amendments help ascertain the purpose and scope of § 305(D)(1)(h) as now in effect. Under the 1985 amendment, there was a partial exemption of refinery gas. The 1985 amendment also added the valuation provision for "(r)efinery gas used for any taxable purpose...." That amendment
adopted a partial exemption from an existing tax and established the method of valuing the non-exempt portion, which was difficult to value because it was not purchased by the refiner or sold on the open market.
BP Oil Co., 651 So.2d at 1328 n. 6.
As noted by BP Oil Co., § 305(D)(1)(h) as amended by Acts 1990, No. 476 (eff. July 18, 1990) "now clearly excepts refinery gas from the energy sources exemption." BP Oil Co., 651 So.2d at 1331. Also, Acts 1990, No. 476
amended Subsection 305D(1)(g) (renumbered from 305[4](a)[vii]) to delete any reference in the exemption to refinery gas (leaving "[n]atural gas" as the only exemption).
BP Oil, Co., 651 So.2d at 1332.
Refinery gas is no longer generally exempted (as is natural gas) under La.R.S. 47:305(D)(1)(g). The Supreme Court's summation of the 1990 amendments strongly suggests the valuation in § 305(D)(1)(h) does not create a partial exemption based on valuation. It is significant that, although the legislature removed the exemption for refinery gas, it kept the valuation provision in effect. That suggests the valuation is distinct from the exemptions under the statute and is unaffected by a legislative suspension of those exemptions.
I dissent from the majority's interpretation of § 305(D)(1)(h) and would reverse summary judgment on that issue. Because I interpret § 305(D)(1)(h) to include a valuation formula for refinery gas which was unaffected by the suspension of exemptions, I would reverse the judgment insofar as it sets the value of refinery gas different than the formula in the statute.
I agree the trial court properly considered parol evidence to determine the scope of the agreement to suspend prescription, but for different reasons than stated by the majority. The majority states, "The waiver states that B.P. Exploration & Oil, Inc., waives prescription on all taxes owed by it for the tax years 1989 and 1990." The agreement does not purport to apply to all taxes, but specifies certain taxes.
*1229 BP cites several cases on the equitable remedy of reformation of instruments. That remedy allows correction of a mistake or error in a written instrument which does not express the true contract of the parties. Ober v. Williams, 213 La. 568, 35 So.2d 219, 224 (1948); Valhi, Inc. v. Zapata Corp., 365 So.2d 867, 870 (La.App. 4th Cir.1978); Fontenot v. Lewis, 215 So.2d 161, 163 (La.App. 3d Cir.1968). Those cases generally involve an action or reconventional demand by a contracting party to reform or correct an error in the written instrument. They are not dispositive here because the parties are arguing over the scope of the agreement, not whether they agreed to unambiguous terms in the agreement.
The majority "determine[s] that in the interest of justice, parol evidence should be allowed under the circumstances of this case." Parol evidence should be based on ambiguity in the contract or otherwise justified under the law rather than on unexplained "interest of justice ... under the circumstances of this case."
Though not argued by the parties, the agreement is ambiguous in scope because it suggests it applies to taxes not yet assessed at the time the agreement was executed. The agreement to suspend prescription states:
Whereas, both the taxpayer and the Secretary of Revenue and Taxation desire to have additional time within which to discuss the legal questions and facts involved, it is hereby agreed that the Secretary of Revenue and Taxation shall not finally assess nor bring suit for collection of such taxes prior to February 1, 1994, and the taxpayer agrees that the running of the period of prescription against the assessment or collection of any such tax due and owing the State ... is hereby suspended.... [Emphasis added.]
The agreement to suspend prescription applies to sales (and other) tax for 1/1/89 through 12/31/90. According to the briefs, it was executed by a signatory for BP Oil & Exploration, Inc., a company formed from the merger of BP's exploration and refinery companies. BP claims that the waiver was executed in connection with a specific audit of exploration activities and was unrelated to refining operations. In fact, BP states that the merger of exploration and refining did not occur until six months after the end of the taxable period placed at issue in the waiver agreement, although it occurred prior to execution of the waiver. The trial court found a distinct audit concerning BP Alliance Refinery had been concluded, the taxes paid, and the audit closed. According to the reasons for judgment, testimony shows that once an audit is closed, the Department of Revenue & Taxation does not collect past taxes absent fraud. Based on that, the trial court properly found the waiver did not apply to the refinery taxes.
NOTES
[1] In BP Oil Co. v. Plaquemines Parish Government, 93-1109 (La. 9/6/94), p. 2; 651 So.2d 1322, 1325, on rehearing, (10/13/94), the Supreme Court sets out facts surrounding the legislative history of the statutes involved. Although that case involved local parish taxes, the same statutes are at issue in this case.
[2] The June 15, 1995, oral reasons for judgment were inadvertently omitted from the record. However, because it was the trial court's error in omitting the transcript, this court can consider the reasons on appeal. Both parties to this appeal attached copies of the transcript to their briefs.
[3] Id. at p. 4 (amended order); 1337-38.