691 So.2d 1221 (1996)
STATE of Louisiana, and Ralph Slaughter, Secretary, Department of Revenue and Taxation, State of Louisiana
v.
STAR ENTERPRISE.
Nos. 95-CA-2124, 95-CA-2287.
Court of Appeal of Louisiana, Fourth Circuit.
August 7, 1996.
Writ Granted September 19, 1996.
Order Denying Rehearing September 23, 1996.
*1222 St. Martin & Lirette, Michael X. St. Martin, Michelle Mayne Davis, Houma, and State of Louisiana Attorney General, Richard P. Ieyoub, E. Kay Kirkpatrick, Emory A. Belton, Baton Rouge, and Cossich & Associates, Philip F. Cossich, Jr., Les A. Martin, Belle Chasse, for Plaintiff/Appellee.
Breazeale, Sachse & Wilson, David R. Cassidy, David R. Kelly, Leo C. Hamilton, Baton Rouge, and Breazeale, Sachse & Wilson, John F. Whitney, New Orleans, for Defendant-Appellant.
*1223 Stone, Pigman, Walther, Wittmann & Hutchinson, Judy Y. Barrasso, New Orleans, and Hak K. Dickenson, Catherine L. Zabel, Marathon Oil Company, Houston, Texas, for Amicus Curiae, Marathon Oil Company.
Before Barry and Byrnes and Plotkin, JJ.
BYRNES, Judge.
On July 11, 1995 the trial court rendered judgment in favor of the State of Louisiana and against Star Enterprise imposing use taxes based upon the BTU equivalent value of natural gas for Star's use of refinery gas and coke-on-catalyst[1] in the process of refining crude oil into finished products. Star appealed. We reverse.
On September 19, 1995 the trial court issued a "corrected judgment" awarding specific amounts of taxes as no specific figures were mentioned in the original judgment of July 11, 1995. This second judgment also awarded additional relief to the State not mentioned in the first judgment, including interest and attorneys' fees. Star appealed. We reverse.
Although Star appealed each judgment separately, the appeals were consolidated by this Court.

I. THE VALUE OF REFINERY GAS IS FIXED BY LSA-R.S. 47:305D(1)(H).[2]
LSA-R.S. 47:305 is entitled: "Exclusions and exemptions from the tax." LSA-R.S. *1224 47:305D(1)(h) exempts "[a]ll energy sources used for boiler fuel except refinery gas." [Emphasis added.] The next two sentences of LSA-R.S. 47:305D(1)(h) declare that refinery gas is taxable "provided that its value shall be [as calculated by the statutory formula.]" [Emphasis added.]
Thus all boiler fuel is tax exempt except refinery gas which is valued for tax purposes according to the statutory formula. The State argues that the formula prescribed by the statute results in a valuation that is less than the market value of refinery gas. According to the State, this creates a tax exemption for the amount by which the market value of refinery gas exceeds the value of refinery gas when calculated according to the statutory formula. Therefore, according to the State, when the legislature suspended the tax exemptions found in LSA-R.S. 47:305, it intended to impose a tax on the amount by which the market value of refinery gas exceeds its formula value. The main argument urged by the State in support of this contention is that LSA-R.S. 47:305 is entitled "Exclusions and exemption from the tax" and the valuation formula must be viewed as an exemption as it is found in a subsection of that statute.
In 1972, the state taxing authority and the refining industry reached an administrative resolution of the dispute, agreeing that refinery gas would be taxed at four cents per 1,000 cubic feet. The parties later modified that agreement, effective January 1, 1985, to fix the value at fiftytwo cents per 1,000 cubic feet, subject to annual adjustment. [Emphasis added.]
BP Oil Co. v. Plaquemines Parish Government., 93-1109, p. 3 (La.9/6/94), 651 So.2d 1322, 1326.[3]
Consistent with BP Oil Co., Star Enterprise contends that the formula for valuing refinery gas found in LSA-R.S. 47:305D(1)(h) was enacted solely for the purpose of fixing value. It was not intended to create an exemption, at least not in the same sense as the other exemptions found in LSA-R.S. 47:305. The only tax exemption suspended by the legislature in LSA-R.S. 47:305(D)(1)(h) is the clearly defined exemption of "[a]ll energy sources when used for boiler fuel ..." Refinery gas was explicitly excluded from this exemption and declared to be taxable according to "value" fixed by the formula found in the statute. Because the *1225 exemption did not cover all boiler fuel, the Supreme Court referred to it as a "partial exemption." BP Oil Co., 651 So.2d at 1328, footnote six. The reference in said footnote six of BP Oil Co. to "the non-exempt portion" refers to the category of boiler fuel that does not share the "partial exemption" accorded to boiler fuels generally, i.e., refinery gas.
The State argues that the "non-exempt portion" refers to the value of refinery gas as determined by the statutory formula, from which the State infers a tacit reference to an "exempt portion," i.e., the State contends that BP Oil Co. in footnote six without actually saying so was implying that there was an exemption for the value by which the market value of refinery gas exceeded the value as fixed by the statutory formula. When the sentence in footnote six from which these terms are taken is read in its entirety, it leads to a contrary conclusion:
Act 258 of 1985 was not a revenue raising bill, but rather adopted a partial exemption from an existing tax and established the method of valuing the non-exempt portion, which was difficult to value because it was not purchased by the refiner in the open market. [Emphasis added.]
In context, it is easy to see that "partial exemption" is the antecedent of "non-exempt portion." The sentence is complete and balanced in itself when read in this manner. The State's interpretation would have us read the explicitly stated "partial exemption" (i.e., all boiler fuel except refinery gas) followed by the explicitly stated "non-exempt portion" (i.e., refinery gas) followed by an unspoken reference to an "exemption" for the difference between the statutory formula for valuing refinery gas and its supposed higher market value. Had it been its intent to do so, the Louisiana Supreme Court would have explicitly referred to such an "exemption," especially when the express purpose of footnote six was to explain the functions of LSA-R.S. 47:305D(1)(h). Had one of the functions of LSA-R.S. 47:305D(1)(h) been to create the "exemption" for the difference between the statutory formula value of refinery gas and its supposedly higher market value as argued by the State, the Supreme Court would have mentioned it in footnote six.
Additionally, the language "the method of valuing the non-exempt portion, which was difficult to value because it was not purchased by the refiner or sold on the open market" cannot be reconciled with the State's interpretation. The State argues that the reference to the "non-exempt portion" refers to the statutory formula value alone in an effort to distinguish that value from the market value. But footnote six says that the "non-exempt portion ... was difficult to value." If the "non-exempt portion" refers only to the statutory formula value it would not be "difficult to value." The application of the statutory formula is all that would be required. What is difficult to value is the market value of refinery gas. Thus the statutory formula is an attempt to fix the full value of refinery gas. It is not an attempt to fix a partial value and create an exemption for the balance, at least not in the sense that the concept of exemption was used when exemptions were suspended by the legislature.
That the term "non-exempt portion" can only be a reference to refinery gas as a whole and not a reference to an exemption for the excess of market value over the statutory formula value becomes even clearer in the last clause of the sentence quoted from footnote six which says that the "non-exempt portion ... was not purchased by the refiner in the open market." If we substitute the phrase "the excess of market value over the statutory formula value" for the term "non-exempt portion" as the State contends, footnote six would then read: "... the excess of market value over the statutory formula value... was not purchased by the refiner in the open market." This makes no sense. However, if we substitute "refinery gas" for "non-exempt portion" as contended by Star, footnote six makes perfect sense: "... refinery gas ... was not purchased by the refiner in the open market." Therefore, the reference to the "non-exempt portion" which "was not purchased by the refiner in the open market" must be a reference to refinery gas. It cannot be an arcane reference to an obscure exemption for the difference between *1226 the market value and the statutory formula value.
The State's argument employs the logical fallacy of equivocation, i.e., an argument in which one term, in this case "exemption," is used with differences of meaning, often very subtle. For example, if a statute is enacted creating a five percent sales tax it is normally thought of as a rate fixing statute, even though in a sense it creates an exemption from all rates above five percent. When the legislature suspended exemptions, it suspended only those exemptions explicitly labeled as such in the litany of exemptions set forth in LSA-R.S. 47:305.
It would have been too easy for the legislature to include in the litany of enumerated exemptions "the excess of market value over formula value," or words to that effect. The failure to do so was not inadvertent. We, therefore, hold that the valuation formula is just that and only that: a formula for computing the value of refinery gas, not an indirect or convoluted way of creating an exemption. It replaced a valuation formula that resulted in a much lower rate of taxation. BP Oil Co., 651 So.2d at 1326.
This interpretation of LSA-R.S. 47:305D(1)(h) is consistent with language found throughout BP Oil Co. indicating that the Supreme Court viewed the formula as one fixing value rather than as one creating an exemption.[4]

BP Oil Co. declared that:
Section 305D(1)(h), as amended in 1990 to exempt "all energy sources when used for boiler fuel except refinery gas," now clearly excepts refinery gas from the energy sources exemption. [Emphasis added.]

BP Oil Co., 651 So.2d at 1331.
Thus the "exemption" is an "energy sources" exemption, not an exemption for the excess of market value over formula value. Concomitantly, the valuation formula establishes value. There is no mention of an "exemption" for the difference between the formula value and the market value of refinery gas in either LSA-R.S. 47:305D(1)(h) or in the gloss that BP Oil Co. puts on that statute because none was intended.

II. BURDEN OF PROOF
The trial court held that:
Star was imposed with the burden of introducing competent evidence to sufficiently rebut the prima facie case presented by the State with regard to the taxes owed by Star for its use of refinery gas and coke-on-catalyst.
LSA-R.S. 13:5034 provides that:
Whenever the pleading filed on behalf of the state ... shall be accompanied by an affidavit ... of the counsel or attorney filing the same, that the facts as alleged are true to the best of the affiant's knowledge or belief, all of the facts alleged in the pleadings shall be accepted as prima facie true and as constituting a prima facie case, and the burden of proof to establish anything to the contrary shall rest wholly on the defendant or opposing party. [Emphasis added.]
Star argues that the State's right to have its case tried by preference does not alter the fact that the trial was an ordinary proceeding and the State at all times had the burden of proving its case, because the burden is only on the taxpayer in summary proceedings. We reach the same result regardless of whether the State is entitled to have its alleged facts treated as prima facie true under LSA-R.S. 13:5034.
*1227 LSA-R.S. 47:302A(2) imposes a use tax on the cost price of tangible personal property. It is not contested that "cost price" means the "actual cost ... or the reasonable market value of the tangible personal property" as provided by LSA-R.S. 47:301(3)(a).
The State filed an original and two amending petitions, all verified by Les A. Martin, attorney for the State. The State alleged no facts concerning cost or market value in those petitions. In the State's original petition the only facts alleged in support of its claim for use taxes from Star were:
As part of the process of refining crude oil into finished petroleum products, Star Enterprise used and consumed refinery gas and coke-on-catalyst as energy sources within its refinery.
This allegation fails to establish a prima facie case of either the cost or market value of refinery gas or coke-on-catalyst.
In its first amending petition the State alleged no material facts. In substance it was little more than an argument of law asserting such conclusions as "the valuation exemption for refinery gas was suspended by the legislature" and the "use of coke-on-catalyst is fully taxable, regardless of the purpose for which it is used." No allegations of fact were made about the cost or market value of coke-on-catalyst. LSA-R.S. 13:5034 applies only to fact. It creates no presumptions of law. It confers no advantage on the State where questions of law are concerned.
The State's second amending petition alleged that the State was exercising its right to convert what was originally a summary proceeding into an ordinary proceeding. It also specified for the first time the period for which the State was attempting to impose the use tax, i.e., "for the tax period from December, 1991 to the present." No allegations were made about cost or market value.
The record also contains an affidavit of Les Martin on behalf of the State dated May 15, 1995. That affidavit incorporates by reference schedules purporting to show the actual cost of refinery gas and coke-on-catalyst based on the cost of the crude oil from which they are derived. As a matter of law the actual cost of refinery gas and coke-on-catalyst may not be calculated in this manner. Cf. BP Oil, 651 So.2d at 1330. Therefore, the affidavit and supporting schedules fail to establish a prima facie case for the State on the issue of actual cost price.
The affidavit also incorporates by reference schedules purporting to show the market value of Star's refinery gas and coke-on-catalyst based on "the price of natural gas on an energy equivalent basis." At most this affidavit and supporting schedule creates a prima facie case for the correctness of the calculation of the market value of Star's refinery gas and coke-on-catalyst, but only if we also assume that it is appropriate to calculate market value based on "the price of natural gas on an energy equivalent basis." Whether "the price of natural gas on an energy equivalent basis" is a proper method of determining market value is a question of law. LSA-R.S. 13:5034 affords the State no special advantage on questions of law. Therefore, the State's affidavit and petition create no presumption that "the price of natural gas on an energy equivalent basis" is the proper way under the law to calculate the value of refinery gas and coke-on-catalyst.
Whether the market value of refinery gas and coke-on-catalyst is coincidentally equal to the BTU equivalent of natural gas is a question of fact, as distinguished from the methodology of valuation discussed above. The State's affidavit and schedules contain no allegations of fact to show that the market value of refinery gas or coke-on-catalyst is the same as that of natural gas on an energy equivalent basis. The affidavit merely asserts that the market value should be determined on an energy equivalent basis which is a conclusion of law.
Therefore, the State failed to make a prima facie case establishing either the cost or market value of coke-on-catalyst based on its verified petitions.
Star also contends that it produced sufficient evidence to rebut the State's prima facie case, assuming that it had the obligation to do so. As we agree with this contention, it is not necessary to determine whether the trial court proceedings were summary or ordinary.

*1228 III. COKE-ON-CATALYST HAS NEITHER "ACTUAL COST" VALUE NOR MARKET VALUE
We are satisfied that Star succeeded in proving that coke-on-catalyst has no market value and that it is not the equivalent of natural gas.
LSA-R.S. 47:301(3)(a) defines "cost price"[5] as "actual cost ... or the reasonable market value ... whichever is less." [Emphasis added.]
The Department of Revenue and Taxation regulations related to LSA-R.S. 47:301(3) define reasonable market value as:
"the amount a willing seller would receive from a willing buyer in an arms-length exchange of similar property at or near the location of the property being valued. The amount which would be realized from a "forced" sale is not acceptable as the market value for this purpose.
This definition is consistent with market value definitions generally. Necessarily implicit in this definition is the understanding that the buyer and seller are two different persons, otherwise there is no market. There is a general market for natural gas. It is fungible. The fact that other substances may produce equivalent energy does not give those substances equivalent market value. Marketability is in itself a factor to be used in computing market value. Once Star established as it did that there is no market for coke-on-catalyst the burden then shifts to the State to establish a market value for it.
The State produced only two witnesses: Ms. Connie Kourey and Dr. Burt Wilkins. Ms. Kourey's testimony addressed only Star's exception of lack of procedural capacity. She gave no testimony concerning the merits of the case. The only testimony concerning the merits of the case was that of Dr. Wilkins.
Dr. Wilkins was qualified as an expert in chemical engineering. Dr. Wilkins testified as to cost value based on the BTU value of crude oil. But the Louisiana Supreme Court has already effectively said that a cost value of refinery gas and coke-on-catalyst cannot be calculated based on crude oil when it said that "refinery gas and coke-on-catalyst are not part of the crude oil, but rather are by-products of the refining of crude oil into finished products." BP Oil Co., 651 So.2d at 1330. Dr. Wilkins testified that "refinery gas and natural gas in terms of energy are very similar." This is insufficient to create a presumption that they have very similar market values. It is like saying that in terms of speed, a Rolls Royce is similar to a Honda so we will value them the same. The fact that two different things have one common quality among many creates no presumption of common value.
Dr. Wilkins used the energy equivalent basis for valuing coke-on-catalyst. Dr. Wilkins was asked about the market for refinery gas and coke-on catalyst:
Q. Doctor, do refineries sell refinery gas and coke-on-catalyst in the market?

*1229 A. I don't know of any instance where it is sold.
When the State rested its case, the trial judge addressed the attorney for the State:
Of course you have no way of knowing you haven't put on today, that there is a market outside of the refinery itself.
The State argues and the trial court held that Star, in effect, was a seller to itself of refinery gas and coke-on-catalyst. The State and the trial court reason that this "sale" to itself establishes the market value of those by-products based on the amount of energy Star would have had to purchase in the form of natural gas had it not been able to derive energy from the refinery gas and coke-on-catalyst.
The State's arguments concerning the BTU equivalency of natural gas are not proof of the market value of coke-on-catalyst. The State cites Townsend Elec. Co. v. Evans, 193 Tenn. 536, 246 S.W.2d 967 (1952), as authority for its "sale to oneself" theory of market value. Townsend merely held that where a contractor incorporated certain raw materials into a product he could be considered to be the consumer of those raw materials for tax purposes. Thus in Townsend the product sought to be taxed was both purchased by the contractor and incorporated by the contractor into the finished product. Contrariwise, under the ruling in BP Oil Star Enterprise did not purchase coke-on-catalyst when it purchased the crude oil from which it was derived, nor did it incorporate the coke-on-catalyst into the finished product. Finally, and of even greater significance, is the fact that Townsend makes no mention of market value or any other method of valuation. Townsend is not authority for the proposition that Star Enterprises' use of coke-on-catalyst is a taxable event and it is not support for any method of valuation.
Thus the real question is not whether the use tax applies. It does apply. BP Oil Co., 651 So.2d at 1330. The question is one of valuation. In the case of refinery gas that valuation is fixed according to the formula found in LSA-R.S. 47:305D(1)(h). In the case of coke-on-catalyst the value is actual cost or reasonable market value, whichever is less. LSA-R.S. 47:301(3)(a). But coke-on-catalyst has neither actual cost value based on the cost of crude oil nor market value. This Court recently found that "coke-on-catalyst is not a commodity that can be sold in the open market." State v. BP Exploration & Oil Inc., 95-2031, p. 12 (La.App. 4 Cir. 1/31/96), 667 So.2d 1219, 1226;[6] See also Mobil Oil Corp. v. Johnson, 93 Ill.2d 126, 66 Ill.Dec. 285, 442 N.E.2d 846 (1982).
Ronald Anderson, the Louisiana Plant manager for Star Enterprises, testified that: "Coke-on-catalyst you cannot sell." Mr. Anderson also testified that the company never even put a value on the coke-on-catalyst for internal accounting purposes.[7] If coke-on-catalyst produces energy that has value to Star Enterprise, that does not establish its market value. Value in use is not market value. If that were the case an automobile used only to drive to and from work could be taxed at the same rate regardless of whether it was an old jalopy or a new Rolls Royce.
The State argues that coke-on-catalyst is "similar property"[8] to natural gas as that *1230 term is used in the regulation defining market value. But the State may not by regulation expand the meaning of market value to mean value in use thereby enabling the State to convert a market value tax into a BTU tax. In order to tax Star Enterprises' use of coke-on-catalyst the legislature must enact additional legislation. Coke-on-catalyst is beyond the reach of market value taxation because it has no market value.
In Mobil Oil Corp., supra, the Supreme Court of Illinois held that the portion of the crude oil purchased by the refinery that is converted into coke-on-catalyst or refinery gas in the process of refining the crude oil can be taxed. It was necessary to take this approach because the Illinois Supreme Court found that refinery gas and coke-on-catalyst have no market value. The Illinois court rejected Mobil Oil's argument that the "refinery fuels" did not exist in the crude oil because they are chemically different. This Court is constrained from adopting the reasoning of the Illinois court which would enable Louisiana to tax that portion of the crude oil purchased by Star that is transformed into coke-on-catalyst,[9] because our Supreme Court in BP Oil Co., 651 So.2d at 1330, has declared that:
[R]efinery gas and coke-on-catalyst are not part of the crude oil, but rather are by-products of the refining of crude oil into finished products ... Although the crude oil was purchased for "further processing into articles of tangible personal property for sale at retail," the use of the by-products of the processing is the event sought to be taxed in this case. The refinery gas and coke-on-catalyst, once separated from the raw material, were not further processed into an end product for sale at retail. [Emphasis added.]
The State cites Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 119 P.2d 945 (1941), in support of its argument that "Star is the purchaser of refinery gas and coke-on-catalyst when it purchases raw crude oil." Chicago Bridge is not applicable because the raw materials sought to be taxed in that case were incorporated in the end product. As was noted in BP Oil Co., coke-on-catalyst is not "processed into an end product for sale at retail." Chicago Bridge did not attempt to tax the by-products of a manufacturing process which is what our Supreme Court declared coke-on-catalyst and refinery gas to be in BP Oil Co. Valuation was not an issue in Chicago Bridge.
Townsend Electric Co., supra, also involved raw materials actually incorporated into the end product. The issue of valuation was not litigated. No attempt was made to tax a by-product or waste product used in the manufacturing or construction process by a resourceful manufacturer, processor, or contractor.
Columbia Quarry Co. v. Department of Revenue, 40 Ill.2d 47, 237 N.E.2d 525 (1968), involved the taxation of limestone used to produce slag. The court found that in the process 56.3% of the limestone was incorporated into the finished product. The applicable tax was determined accordingly. Star's refinery gas and coke-on-catalyst are not incorporated into the end product. BP Oil Co.

IV. THE CORRECTED JUDGMENT OF SEPTEMBER 19, 1995
The trial court's original judgment rendered herein on July 11, 1995 found that use taxes were owed to the State but failed to award any specific sum and made no provision for attorneys' fees or interest.
Star perfected its appeal on July 14, 1995 when it filed its appeal bond. On July 20, *1231 the State filed a "Motion for Partial New Trial" which was heard in the trial court on September 18, 1995. On September 19, 1995 the trial court rendered a judgment[10] in which it declared that it had "not ruled on the motion for partial new trial ... and has instead considered the Motion of the State as a correction of an omission in the record; namely that the judgment of July 11, 1995 inadvertently omitted specific monetary amounts; therefore, the Court does hereby correct this omission ..." The judgment of September 19, 1995 held Star liable for the sum of $4,159,709.00 for taxes and attorneys' fees[11] in connection with refinery gas, and $2,398,964.00 for taxes and attorneys' fees in connection with coke-on-catalyst.
Star contends that the trial court was without jurisdiction to render the judgment of September 19, 1995 pending Star's suspensive appeal of the judgment of July 11, 1995. We agree. LSA-R.S. 13:5031 provides for summary proceedings in tax cases brought by the State. LSA-R.S. 13:5033 requires that a suspensive appeal from a judgment rendered in such proceedings be taken within five days. LSA-R.S. 13:5033 also prohibits news trials and rehearings. LSA-R.S. 47:1574 found in that portion of the statutes devoted to the collection of taxes by the State contains provisions that are identical in these respects.
The State contends that the statutory prohibition against new trials in tax claims brought by the State only applies to the defendant taxpayer. The State claims the right to move for a new trial. The State argues by analogy to the cases of Collector of Revenue v. Frost, 121 So.2d 731, 240 La. 165 (1960), and Collector of Revenue v. Rundell, 72 So.2d 749, 751 (La.App. 2 Cir.1953). Those cases held that the prohibition against devolutive appeals applied only to the defendant-taxpayer and not to the State. Following this line of reasoning, Star's suspensive appeal of the original judgment was premature because the State's delay for applying for a new trial under LSA-C.C.P. art. 1974 had not elapsed. From this the State concludes that the judgment of the trial court was not final and the trial court retained jurisdiction to render the "corrected judgment."
Star had five days in which to file its suspensive appeal which it did. Assuming for purposes of argument that the State is permitted by the rationale of Frost and Rundell to apply for a new trial, that right is lost *1232 once Star filed its timely motion for a suspensive appeal divesting the trial court of jurisdiction. Even if the specific provision requiring the filing of the taxpayer's suspensive appeal in tax matters within five days does not totally exclude the operation of the article providing for new trials generally, it would at the very least take precedence. Once a timely appeal is filed the trial court retains jurisdiction over a judgment on appeal only in those limited circumstances referred to in LSA-C.C.P. art. 1951 and 2088.
LSA-C.C.P. art. 2088 provides that the jurisdiction of the trial court is divested when the appeal has been perfected by the granting of the order of appeal and the filing of the appeal bond. Star completed this process by July 14, 1995. At that point the trial court was divested of jurisdiction and had no authority to render the judgment of September 19, 1995 unless the State can show that that judgment comes under one of the exceptions listed in LSA-C.C.P. art. 2088, or concerned issues not reviewable on appeal. State Through Dept. of Social Services on Behalf of Harden v. Southern Baptist Hosp., 94-2228 (La.App. 4 Cir. 10/12/95), 663 So.2d 443, writ denied 95-2751 (La. 1/26/96), 666 So.2d 676.
The failure of the trial court to award specific amounts of taxes, attorneys' fees, and interest were all part of the main demand and were reviewable on the appeal of the first judgment had the State filed an answer to Star's appeal.[12] The concept of the trial court retaining jurisdiction over matters not reviewable on appeal was not intended to apply to those matters which could have and should have been appealed. The facts before us are very different from those in Harden where this Court sustained the jurisdiction of the lower court to approve a settlement between two parties that was entered into after appeals had been taken. The settlement had not been contemplated either explicitly or implicitly among those matters litigated or litigable at the trial on the merits.
Nor are the facts before us analogous to those found in Valet v. City of Hammond, 577 So.2d 155, 162 (La.App. 1 Cir.1991), where it was held that a judgment dismissing a third party demand did not divest a trial court of jurisdiction to proceed with a trial on the merits of the main demand:
The judgment appealed from did not touch upon or adjudicate any of the Gerages' claims against Hammond. Since the trial court was divested of jurisdiction only as to the issues which were the subject of the judgment appealed from, the trial court maintained jurisdiction over the merits of the main demand and did not err in proceeding with a trial on the merits once it signed the motion and order for suspensive appeal.

Valet, 577 So.2d at 162.
Similarly in Byles Welding & Tractor Co., Inc. v. Butts Sales & Service, Inc., 578 So.2d 246, 248 (La.App. 3 Cir.1991):
[I]n the case before us, Howard and Gloria Butts appealed a judgment rendered against them. Butts Sales was a separate defendant against whom no judgment had been rendered. No matter involving Butts Sales was reviewable by the appellate court in the first appeal as we noted in our prior opinion. Therefore, because of the peculiar circumstances of this case, the trial court was not divested of jurisdiction over Butts Sales.
Assuming for purposes of argument only that the trial court retained jurisdiction to decide the issues of attorneys' fees and interest because they are not reviewable on the appeal of the original judgment, this does not serve as procedural authority for the trial court to award those elements of recovery by way of amended or corrected judgment. The effect of the State's argument would be to limit the application of LSA-C.C.P. art. 1951 which prohibits amendments to only those judgments that are not pending appeal. LSA-C.C.P. art. 1951 applies even to those judgments that have not been appealed. The retention of jurisdiction to amend does not confer carte blanche to amend.
*1233 The proper method for making the substantial changes incorporated in the second judgment at the trial court level was by motion for new trial, assuming the trial court retained jurisdiction and had the authority under the tax statutes to hear a motion for a new trial. The trial court specifically stated that the judgment of September 19, 1994 was not rendered as a ruling on the State's motion for a partial new trial. Therefore, the corrected or amended judgment cannot be considered to be, in effect, a judgment on a motion for a new trial. Cf. Naulty v. Oupac, Inc., 448 So.2d 1322 (La.App. 5 Cir.1984).
When an amendment of the substance of a judgment is made without the granting of a new trial, the amended judgment is invalid or null and not within the purview of LSA-C.C.P. art. 1951. Brown v. Brown, 550 So.2d 815 (La.App. 2 Cir.1989).[13]
The trial court in its judgment of September 19, 1995 referred to "an omission in the record." LSA-C.C.P. art. 2088(4) provides that the trial court retains jurisdiction to "correct any ... omission of the trial record, as provided in Article 2132." LSA-C.C.P. art. 2132 refers to the record on appeal. It is not authority for the trial court to "correct" a judgment by making material changes involving millions of dollars. LSA-C.C.P. art. 1951(1) permits the trial court to amend a judgment to alter phraseology, but specifically forbids changes in substance as was done in this case.
Likewise, the State's contention that the action of the trial court should be viewed as a correction of "errors of calculation" as permitted by LSA-C.C.P. art. 1951(2) is without merit. The State relies on Willie v. American Casualty Co., 547 So.2d 1075 (La. App. 1 Cir.1989) and Thibaut v. Thibaut, 607 So.2d 587 (La.App. 1 Cir.1992). Willie is inapposite and Thibaut supports Star's position.
In Willie the trial judge polled the jury after the verdict was rendered to make sure that the jury understood that the sums awarded by the jury were over and above settlement amounts. The verdict was clarified, but no amounts were added or changed. Willie appears to represent the extreme outer limit of what constitutes a permissible amendment. It cannot be stretched far enough to constitute authority for awarding amounts not awarded in the original judgment and awarding entirely new elements of recovery (interest and attorneys' fees) not awarded in the original judgment.
In Thibaut the court ruled that it was error for the trial court to amend its judgment once the defendant had appealed.
The failure to include specific amounts is not an error of calculation. Oliver v. Department of Public Safety & Corrections, Office of Alcoholic Beverage Control, 94-1223 (La. App. 1 Cir. 6/23/95), 657 So.2d 596. The trial court cannot circumvent the strict LSA-C.C.P. art. 1951 limitations on amending judgments by calling an amendment a "correction of an error of calculation."
The second judgment of the trial court did more than supply specific dollar amounts for items awarded in the original judgment. The second judgment awarded the state additional relief, including attorneys fees not awarded in the original judgment. All such additional relief is prohibited by LSA-C.C.P. art. 1951. ITT Residential Capital Corp. v. Cheuk, 94-744 (La.App. 5 Cir. 5/30/95), 656 So.2d 747, writ denied, 95-1634 (La. 10/6/95), 661 So.2d 465. This renders the judgment of September judgment null and void. Id.
The September judgment also awarded the State interest not included in the original judgment. As a matter of law this is not a change of phraseology nor the correction of a calculation. Stevenson v. State Farm, 624 So.2d 28 (La.App. 2 Cir.1993). The September judgment is an absolute nullity. Id.

*1234 V. CONSTITUTIONAL ISSUES
Star argues that the State's attempt to substitute the value of natural gas for the reasonable market value of refinery gas and coke-on-catalyst violates Star's constitutional right to equal protection. As we have held that the State does not have the right to tax coke-on-catalyst and refinery gas based on the value of natural gas we do not reach this constitutional question.

VI. DECREE
To the extent that our previous opinion in State of Louisiana, and Ralph Slaughter, Secretary, Department of Revenue and Taxation v. BP Exploration & Oil Inc., 95-2031 (La.App. 4 Cir. 1/31/96), 667 So.2d 1219 conflicts with this decision, it is overruled.[14] For the foregoing reasons the trial court judgment dated July 11, 1995 is reversed and the judgment of September 19, 1995 is declared null and void and vacated.
REVERSED AND VACATED.

ORDER DENYING REHEARING
PER CURIAM.
The State of Louisiana filed a motion to poll this Court regarding its decision to overrule State v. BP Exploration & Oil, Inc., 95-2031 (La.App. 4 Cir. 1/31/96), 667 So.2d 1219, and an application for rehearing en banc.
The State's application for rehearing is denied.
SCHOTT, BARRY, BYRNES, ARMSTRONG, PLOTKIN, WALTZER and LANDRIEU, JJ., voted to overrule.
KLEES, JONES and MURRAY, JJ., voted not to overrule.
CIACCIO and LOBRANO, JJ., were recused.
KLEES, Judge, concurring.
I would not overrule State v. BP Exploration & Oil Inc., 95-CA-2031 (La.App. 4 Cir. 1/31/96), 667 So.2d 1219. The fact that coke-on-catalyst is not sold on the open market does not necessarily mean that it cannot be valued for purposes of taxation. The trial judge in State v. BP Exploration did an admirable job of arriving at a value according to the Supreme Court's clear directive in BP Oil Co. v. Plaquemines Parish Gov't, 93-1109 (La. 9/6/94), 651 So.2d 1322, that refinery gas and coke-on-catalyst were subject to taxation.
Nevertheless, the inherent difficulty in determining a market value for these products under the circumstances suggests that perhaps our Supreme Court should revisit this issue. The approach of the Illinois Supreme Court in Mobil Oil Corp. v. Johnson, 93 Ill.2d 126, 66 Ill.Dec. 285, 442 N.E.2d 846 (1982) cited by the majority, is both logically consistent and practical.
MURRAY, Judge, dissenting with reasons.
I respectfully dissent from the overruling of State v. BP Exploration & Oil, Inc., 95-2031, p. 12 (La.App. 4th Cir. 1/31/96), 667 So.2d 1219, 1226. I agree with Judge Klees that the fact that coke-on-catalyst is not sold on the open market does not necessarily mean that it cannot be valued for taxation purposes.
NOTES
[1] Refinery gas and coke-on-catalyst are not part of the crude oil, but rather are by-products of the refining of crude oil into finished products. BP Oil Co. v. Plaquemines Parish Gov't., 93-1109 (La. 9/6/94), 651 So.2d 1322.
[2] We adopt and incorporate into this opinion Judge Barry's dissent in State v. BP Exploration & Oil Inc., 95-2031 (La.App. 4 Cir. 1/31/96), 667 So.2d 1219, 1227-1228:

The majority holds that La.R.S. 47:305(D)(1)(h) is an exemption, not a valuation statute. I believe Sec. 305(D)(1)(h) provides an exemption, excepts refinery gas from that exemption, and sets a valuation formula for taxation of refinery gas. Thus, the valuation provision for refinery gas remains in effect, whether or not there is in effect a legislative suspension of exemptions.
La.R.S. 47:305(D)(1) provides in pertinent part:
Sec. 305. Exclusions and exemptions from the tax
D. (1) The sale at retail, the use, the consumption, the distribution, and storage to be used or consumed in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter:
* * * * * *
(g) Natural gas.
(h) All energy sources when used for boiler fuel except refinery gas. Refinery gas shall be subject to the tax imposed by this Chapter, and similar local taxes, provided that its value shall be.... [The statute then sets forth a formula to determine the value of taxable refinery gas.]
BP Oil Co. v. Plaquemines Parish Gov't, 93-1109 (La. 9/6/94), 651 So.2d 1322 (cited by the majority and both parties), considered the constitutionality and scope of La.R.S. 47:305(D)(1)(h) and that statute's effect on the Parish's taxing authority for the tax period between January 1985 and October 1990 (prior to the tax period at issue here). The Parish sought to tax refinery gas at a higher rate than that provided in Sec. 305(D)(1)(h). BP paid the Parish tax under protest then filed suit to recover a refund. BP claimed several exemptions and alternatively argued that any taxable refinery gas was limited to the value fixed in Sec. 305(D)(1)(h) rather than the higher value set by the Parish.
BP Oil Co. held Sec. 305(D)(1)(h) is constitutional. Specifically, Sec. 305(D)(1)(h)'s valuation formula for refinery gas does not infringe on the Parish's constitutional power to levy and collect a tax upon the use of tangible personal property (La. Const. art. VI, Sec. 29(A)). BP Oil Co., 651 So.2d at 1328. The Court remanded to "determine the value of taxable refinery gas according to the method of valuation in La.Rev.Stat. 47:305 D(1)(h)." BP Oil Co., 651 So.2d at 1329.
The Court then examined the applicability of exemptions under Sec. 305(D)(1)(h) to local sales and use tax during the tax period at issue.
The Court traced the history of Sec. 305(D)(1)(h) and noted that prior to the 1985 amendment, all refinery gas was taxable "because there was no specific exemption of refinery gas and the energy sources exemption 47:305(4)(viii), see now 47:305(D)(1)(h)] specifically excepted refinery gas." BP Oil Co., 651 So.2d at 1322. Prior to 1985, La.R.S. 47:305(4) [see now 305(D) ] exempted:
(vii) Natural gas;
(viii) All energy sources when used for boiler fuel except refinery gas when used for boiler fuel.
Acts 1985, No. 258 amended Sec. 305(4) [see now 305(D) ] to exempt refinery gas unless taxable under a later provision, i.e., when used as boiler fuel. The amended statute provided exemptions for:
(vii) Natural gas and refinery gas, which gas shall also be exempt from any sales and use tax levied by any local governmental subdivision or school board, except that refinery gas shall be taxable to the extent specifically hereinafter provided;
(viii) All energy sources when used for boiler fuel except refinery gas.... Refinery gas used for any taxable purpose shall be subject to the tax imposed by this Chapter [provided it is valued according to the valuation provision of this Subsection.].
Thus, under the 1985 amendment (until the 1990 amendment) refinery gas was only taxable when used for boiler fuel and was not taxable when used for other purposes. BP Oil Co., 651 So.2d at 1332.
The history of Sec. 305 and the Supreme Court's interpretation of the amendments help ascertain the purpose and scope of Sec. 305(D)(1)(h) as now in effect. Under the 1985 amendment, there was a partial exemption of refinery gas. The 1985 amendment also added the valuation provision for "(r)efinery gas used for any taxable purpose...." That amendment adopted a partial exemption from an existing tax and established the method of valuing the non-exempt portion, which was difficult to value because it was not purchased by the refiner or sold on the open market.
BP Oil Co., 651 So.2d at 1328 n. 6.
As noted by BP Oil Co., Sec. 305(D)(1)(h) as amended by Acts 1990, No. 476 (eff. July 18, 1990) "now clearly excepts refinery gas from the energy sources exemption." BP Oil Co., 651 So.2d at 1331. Also, Acts 1990, No. 476.
amended Subsection 305D(1)(g) (renumbered from 305[4](a)[vii]) to delete any reference in the exemption to refinery gas (leaving "[n]atural gas" as the only exemption).
BP Oil Co., 651 So.2d at 1322.
Refinery gas is no longer generally exempted (as is natural gas) under La.R.S. 47:305(D)(1)(g). The Supreme Court's summation of the 1990 amendments strongly suggests the valuation in Sec. 305(D)(1)(h) does not create a partial exemption based on valuation. It is significant that, although the legislature removed the exemption for refinery gas, it kept the valuation provision in effect. That suggests the valuation is distinct from the exemptions under the statute and is unaffected by a legislative suspension of those exemptions.
[3] All references in this opinion using the abbreviated case name, "BP Oil Co.", are to this Supreme Court case.
[4] For example:

"The amendment ... added to ... the present Subsection D(1)(h) a provision for fixing the value of [r]efinery gas ..." BP Oil Co., 651 So.2d at 1326.
"The Parish did not have the authority to disregard the valuation method which the Legislature enacted in defining generally the limits of sales and use taxes." Id. at 1328.
"[W]e have already ruled that the method of valuation provided in the local ordinance must yield to the method expressly provided in the state statute for sales and use taxes on refinery gas ..." Id. at 1329.
Although there are many references to "valuation" in BP Oil there are no references to an exemption for the difference between the statutory formula value of refinery gas and its supposed market value. In that regard the silence of BP Oil Co. is deafening.
[5] The State in a footnote contends that the issue of "actual cost" is not before this Court because Star failed to rebut its evidence that showed that the price of the crude oil from which refinery gas and coke-on-catalyst are derived is the measuring standard for establishing the "actual cost" of those substances. We have addressed the "actual cost" issue in this opinion for several reasons:

1. "Actual cost" is an integral part of the definition of "cost price" as set forth in LSA-R.S. 47:301(3)(a). As the use tax is applied to "cost price" we cannot determine "cost price" without considering "actual cost."
2. The State is wrong in implying that it has proven that the "actual cost" is based on the cost of crude oil because Star failed to rebut its evidence. BP Oil declared that refinery gas and coke-on-catalyst are not part of crude oil from which they are derived. Therefore, this is not a question of fact subject to evidentiary debate. Star was not required to rebut the State's crude oil evidence because BP Oil makes that evidence worthless as a matter of law.
3. In spite of the fact that the State argues in its fine print that "actual cost" is not before this Court because Star failed to rebut the State's crude oil evidence, the State effectively acknowledges the inseparability of this issue from the whole question of "cost price" by arguing it throughout its brief. For example, the State refers to "the obvious fact that Star is blatantly ignoring is that Star is the purchaser of refinery gas and coke-on-catalyst when it purchases raw crude oil." The State also urges this Court to follow California and reject "the argument that the State could not look to the purchase of a raw material to determine the applicability of the use tax." These are just two examples of many where the State raises this issue it says is not before this Court.
[6] Although we overrule this case on other grounds we do not find fault with this finding of fact. It is because we agree with this finding of fact that we find it necessary to overrule the decision, i.e., we find it inconsistent to fix a market value for an item for which there is absolutely no market.
[7] There is considerable uncertainty in the record as to what extent Star Enterprises uses coke-on-catalyst as a boiler fuel or otherwise. However, whether it does or it doesn't makes no difference in the outcome of this case because coke-on-catalyst has neither "actual cost" value nor market value.
[8] Coke-on-catalyst is not "similar" to natural gas for many reasons: it produces toxic and corrosive gasses, it will not sustain a flame and it is hard to handle. It would be very expensive to convert it to a marketable form. The fact that natural gas might be used in place of refinery gas or coke-on-catalyst to produce energy does not mean that refinery gas or coke-on-catalyst can be used in place of natural gas. The State's argument and the trial court's decision suffers from the logical fallacy of the undistributed middle. In effect the State and trial court subscribe to the following reasoning: Natural gas produces energy. Coke-on-catalyst produces energy. Therefore, coke-on-catalyst and natural gas are the same. The nature of this fallacy becomes more obvious in the following example: Cats are mammals. Dogs are mammals. Therefore, cats are dogs. Ruggero J. Aldisert, Logic for Lawyers 10-5 (1992).
[9] The approach taken by the Illinois Supreme Court would not be inequitable if applied in Louisiana because the crude oil purchased by Star is exempt from sales tax as a raw material based on the theory that it will be taxed on the other end when refined into a finished product. The portion converted into coke-on-catalyst escapes taxation entirely under currently enacted lower of "actual cost" or market value use tax.

The Illinois approach avoids the casuistries of "seller to oneself" and "energy equivalent" valuation. Taxing coke-on-catalyst as a proportional part of the crude oil from which it is derived does not involve such strained reasoning, but that option has been foreclosed by BP Oil.
[10] This judgment of September 19, 1995 reads in pertinent part as follows:

WHEREBY, the court has not ruled on the motion for partial new trial filed herein by plaintiff [emphasis added] and has instead considered the Motion of the State as a correction of an omission in the record; namely, that the judgment of July 11, 1995 inadvertently omitted specific monetary amounts; therefore, the Court does hereby correct this omission as follows: IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of Plaintiffs, the State of Louisiana and Ben Morrison, Secretary, Department of Revenue and Taxation, State of Louisiana, and against Defendant, Star Enterprise, in the amount of FOUR MILLION ONE HUNDRED FIFTY NINE THOUSAND SEVEN HUNDRED NINE DOLLARS ($4,159,709.00) which represents taxes, and interest pursuant to La.Rev. Stat. 47:1601 and attorneys fees pursuant to La.Rev.Stat. 47:1512 for the use of refinery gas from January 1, 1992 through December 31, 1994, and there also be judgment herein in favor of Plaintiffs, the State of Louisiana and Ben Morrison, Secretary, Department of Revenue and Taxation, State of Louisiana, and against Defendant, Star Enterprise, in the amount of TWO MILLION THREE HUNDRED EIGHTY SIX THOUSAND NINE HUNDRED SIXTY FOUR DOLLARS ($2,386,964.00) which represents taxes, and interest pursuant to La.Rev.Stat. 47:1601 and attorneys fees pursuant to La.Rev.Stat. 47:1512 for the use of coke-on-catalyst from January 1, 1992 through December 31, 1994; and there also be judgment herein in favor of the State of Louisiana for all taxes and interest, pursuant to La. Rev.Stat. 471602 and attorney's fees pursuant to La.Rev.Stat. 47:1512 from the period of January 1, 1995 through April 20, 1995; and there also be judgment herein in favor of the State of Louisiana for additional interest as provided by La.Rev.Stat. 47:1601 and additional attorneys fees as provided by La.Rev.Stat. 47:1601 and additional attorneys fees as provided by La.Rev.Stat. 47:1512, from April 20, 1995 until paid in full.
[11] Star also contends that it was error for the trial court to award attorneys' fees pursuant to LSA-R.S. 47:1512 without a hearing to determine the reasonableness of those fees. As the award of attorneys' fees in the second judgment was improper we do not reach the issue of whether the amount of attorneys' fees was reasonable.
[12] The very fact that the State applied for a "new" trial is an acknowledgement by the State that the matters for which it sought a new trial were within the province of the original trial.
[13] Judge Hightower's concurring opinion in Brown suggests that under very narrow limitations a second judgment might be permissible in those instances where there is a main demand and an incidental demand, both of which were decided but, either through error or inadvertence, reference to the incidental demand was omitted in the original signed judgment. This view is based on the premise that partial final judgments are permitted in certain instances. This theory provides no support for the September 19, 1995 judgment in the instant case. Cf. Valet v. City of Hammond, supra.
[14] Pursuant to the requirements for overruling previous opinions of this circuit, this opinion has been submitted to all twelve judges of this court. A majority has voted to overrule State of Louisiana, and Ralph Slaughter, Secretary, Department of Revenue and Taxation v. BP Exploration & Oil Inc., id. Judges Ciaccio and Lobrano were recused.